**Nelson Martinez ACOSTA, Plaintiff,**

v.

**Miguel Hernandez AGOSTO, and Juan Rivera Ortiz, in their personal and official capacities, Defendants.**

**Civ. No. 84–1441(JP).**

United States District Court,
D. Puerto Rico.

June 21, 1984.

Alex Gonzalez, Hato Rey, P.R., Antonio Cordova Gonzalez, San Juan, P.R., for plaintiff.

Marcos A. Ramirez Irizarry, Ramirez & Ramirez, Hato Rey, P.R., for defendants.

### OPINION AND ORDER

PIERAS, District Judge.

On May 30, 1984, the Court was faced with the petition of plaintiff, the Secretary

of Justice Nelson Martinez Acosta, to enjoin his attendance at a hearing before the Senate Nominations Committee, to be held the following day, May 31, 1984, at 10:00 a.m. Said petition was temporarily granted that same evening and a preliminary hearing was scheduled for June 8, 1984, in order to provide both parties an opportunity to present their respective views. The hearing was duly held as scheduled, the Court was appraised of the merits of the case and hereby concludes as follows:

## I. FACTUAL BACKGROUND:

The factual background of the present case encompasses the competing interests of the Executive and Legislative Branches of the Commonwealth of Puerto Rico regarding their powers as provided by the Constitution of Puerto Rico, under Article IV, Sections 4 and 5, which read as follows:

§ 4. [Powers and duties of Governor]

The Governor shall execute the laws and cause them to be executed.

He shall call the Legislative Assembly of the Senate into special session when in his judgment the public interest so requires. He shall appoint, in the manner prescribed by this Constitution or by law, all officers whose appointment he is authorized to make. He shall have the power to make appointments while the Legislative Assembly is not in session. Any such appointments that require the advice and consent of the Senate or of both houses shall expire at the end of the next regular session....

§ 5. [Appointment of Secretaries; Council of Secretaries]

For the purpose of exercising executive power, the Governor shall be assisted by Secretaries whom he shall appoint with the advice and consent of the Senate. The appointment of the Secretary of State shall in addition require the advice and consent of the House of Representatives, and the person appointed shall fulfill the requirements established in Section 3 of this Article. The Secretaries shall collectively constitute the Governor's advisory council, which shall be designated as the Council of Secretaries.

This controversy stems from the precarious power struggle of plaintiff's recess appointment by the Governor of Puerto Rico to the position of Secretary of Justice, and the power of advice and consent which the Puerto Rican Senate has and its legislative power of investigation. It is well accepted and known in Puerto Rico that the Governor and the Senate, besides being from different political parties, have been in public confrontation and political disharmony. On April 12, 1984, near the end of the past regular session of the Legislature, the Senate approved Senate Resolution No. 810 (Exhibit 1) ordering the Senate Appointment Committee to conduct an investigation of all interim and recess appointments made by the Governor. Nelson Martínez Acosta was appointed Deputy Secretary of Justice on September 17, 1983, when Carmen Rita Vélez Borrás, then Secretary of Justice, resigned; the plaintiff became Acting Secretary of Justice on December 20, 1983. The Secretary of Justice was subsequently sued in the local Courts by the Senate on May 11, 1984 and an injunction was sought to bar him from assuming the duties of Secretary of Justice. *Hernández Agosto v. Martínez Acosta,* Superior Ct. of P. Rico, S.J. Part, Civil No. PE 84–610 (1003). Mr. Nelson Martínez Acosta held the position in an interim basis throughout the time in which the Senate held its regular session, but his name was never formally submitted to the Senate Nominating Committee for confirmation and no special session was called for that purpose. The next ordinary session of the Legislature will be the second Monday of January, 1985 according to the Laws and Constitution of the Commonwealth of Puerto Rico. By that time, a new Senate will be in as the general elections will be held November 6, 1984. The Governor is not required to submit his recess appointments to the Legislature when the latter is not in session. To call a special session of the Legislature and the decision of what to include in the Agenda is a prerogative of the Executive Branch of Government.

The Governor, on May 17, 1984, appointed plaintiff to the post of Secretary of Justice, in a recess basis. In response to this, on May 24, 1984, the President of the Senate, Senator Miguel Hernández Agosto, codefendant herein, acting pursuant to Rule XII (12) of the Senate Regulations, and Senate Resolution No. 810, directed and ordered the Senate's Standing Committee on Appointments to commence an investigation and hold public hearings on the recess appointment of plaintiff as Secretary of Justice. One day later, on May 25, 1984, Senator Juan Rivera Ortíz, codefendant herein, acting pursuant to Rule XIV(1)(6) of the Senate Regulations, issued a subpoena for the attendance of plaintiff, in his official capacity as Secretary of Justice, to a public hearing of the Appointment Committee on May 31, 1984. The Secretary of Justice was served on May 29, 1984 and the following day he filed the present civil rights suit seeking injunctive relief enjoining him from attending the hearing and monetary relief. This Court, on May 30, 1984, issued a Temporary Restraining Order enjoining defendants from enforcing the subpoena and scheduled the preliminary hearing subject of this Opinion and Order.

## II. CONCLUSIONS OF LAW:

It becomes paramount for our discussion to recognize the purpose of the legislature and the legislative freedom which its members enjoy. Article I, Sec. 6, Clause 1, of the Constitution of the United States, provides:

"The Senators and Representatives shall receive a compensation for their services to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their attendance at the Sessions of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

■ This legislative immunity belongs to the members of Congress, not with the purpose of shielding them against prosecution, but rather to protect the integrity of the legislative process by ensuring the independence of the individual legislators in executing their duties without fear of prosecution. *See: United States v. Brewster,* 408 U.S. 501, 507, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972); *Kilbourn v. Thompson,* 103 U.S. 168, 26 L.Ed. 377 (1881); *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *reh. den.* 409 U.S. 902, 93 S.Ct. 98, 34 L.Ed.2d 165.

■ It must be noted that the Clause shields not only federal legislators, but state legislators as well. *Star Distributors, Ltd. v. Marino,* 613 F.2d 4 (2nd Cir. 1980); *Lake Country Estates v. Tahoe Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1971). Thus, under Title 42, United States Code, Section 1983, state and federal legislators are immune from suit for injunctive relief and damages based on their activities within the traditional sphere of legislative activity. The Clause's privilege covers "things generally done in session of the House by one of its members in relation to the business before it." *Kilbourn, supra,* quoted with approval in *United States v. Johnson,* 383 U.S. 169, 179, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966). As to matters not encompassing speech or debate by one of its members, the privilege will reign if these other matters constitute "an integral part of the deliberative and communicative process by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House ..." *Gravel v. United States,* 408 U.S., at 625, 92 S.Ct., at 2627. Furthermore, the Courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations." *United States v. Doe,* 455 F.2d 753, 760 (1st Cir.1972).

The Supreme Court case of *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct 783, 95 L.Ed. 1019 (1951), involved a suit for violation of civil rights by the Senate Fact-Finding Committee on Un-American Activities, a California Legislative Committee. Mr. Justice Frankfurter ruled that under the circumstances of the case, the committee and its individual members were acting in the sphere of legitimate legislative activities in calling the plaintiff, Brandhove, before it and examining him. The Court held that the civil rights statute did not create a civil liability for the Committee's conduct. The background of *Tenney* puts us in the "Red" scare following World War II. Brandhove alleged that the hearing "was not held for a legislative purpose", but was designed "to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights of free speech ... " *Tenney*, 71 S.Ct. at 785. The Supreme Court emphasized that "the claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence, but for the public good." *Tenney*, at 788.

In the case at bar, the defendants are members of the Puerto Rican Senate and their investigation of plaintiff as Secretary of Justice becomes part of the function of a representative government. The legislature acts within the ambit of its broad authority to investigate, to inform the public and ultimately to legislate against suspected corruption and abuse of power in the Executive Branch.

Leglislative committees have been charged with losing sight of their duty of disinterestedness. In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses. The Courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province.

To find that a committee's investigation has exceeded the bounds of legislative power, it must be obvious that there was an usurpation of functions exclusively vested in the Judiciary or the Executive. *Tenney*, at 789.

It would have been different in the case at bar if the Senate Committee had called plaintiff to pass upon his confirmation. This they could clearly not do. As we stated before, under Article IV, Section 4, the Governor has the power to make appointments while the Legislative Assembly is not in session. As of April of this year, the Legislature has been in recess. The 1985 Legislature will be elected by the people of Puerto Rico during the November 6, 1984 elections. Therefore, it would be a farce to conclude that such action was within the legislative purpose. Such farce cannot be sanctioned.

Plaintiff petitions this Court to enjoin the activity of the Senate investigation as it concerns him by arguing that the Senate's activities are ultra vires; especially since his appointment has not been submitted for Senate consideration. The Committee, in investigating and issuing a subpoena for plaintiff's appearance acts in a legitimate manner, and not even plaintiff's claim of a Constitutional violation works to erode the historical protection afforded members of Congress.

"Congressmen and their aides are immune from liability for their actions within the legislative sphere, *Gravel v. United States*, 408 U.S. 606, 624–625 [92 S.Ct. 2614, 2626–2627, 33 L.Ed.2d 583] (1972) even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312–313, 93 S.Ct. 2018, 2024–2025, 36 L.Ed.2d 912 (1973); *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 510, 95 S.Ct. 1813, 1825, 44 L.Ed.2d 324 (1975).

In *Eastland v. United States Servicemen's Fund, supra,* the Servicemen's Organization brought action against the Sen-

ate Chairman and the Subcommittee on Internal Security to enjoin the subpoena for production of all bank records where the Servicemen's Fund held an account. Mr. Chief Justice Burger resolved that activities of the Senate subcommittee, the individual senators and chief counsel fell within the "legitimate legislative sphere" and were protected by the speech and debate clause. The Respondents in *Eastland*, at 508–509, 95 S.Ct. at 1824, relied on *Gravel v. United States*, 408 U.S. 606, 621, 92 S.Ct. 2614, 2625, 33 L.Ed.2d 583 (1972) for the proposition that:

"No prior case has held that members of Congress would be immune if they executed an invalid resolution by themselves carrying out an illegal arrest, or if in order to secure information for a hearing, themselves seized the property or invaded the privacy of a citizen. Neither they nor their aides should be immune from liability or questioning in such circumstances."

■ The Secretary of Justice relies on this type of argument in alleging a deprivation of his civil rights. Mr. Chief Justice Burger agrees that the above quote refers to Congressional actions *not* essential to legislating. *Eastland*, 421 U.S. at 509, 95 S.Ct. at 1824. Accordingly, the immunity granted to the legislature involves an immunity only during the legislating activities legitimately taking place. However, counsel for defendants has put forward that the legislature enjoy absolute legislative immunity.

The instant case is similar in scope to the First Circuit case of *Colón Berríos v. Hernández Agosto*, 716 F.2d 85 (1st Cir. 1983), where a civil rights action was filed to enjoin members of the Judiciary Committee of Puerto Rico from compelling plaintiffs to appear and testify publicly at televised hearings concerning a shooting incident (Cerro Maravilla) involving members of a radical terrorist group and from publishing documents which were covered by a protective order in a separate civil rights action. Three arguments were raised by appellants to prove the existence of a

"proper case" for enjoining state legislative activity and overcoming the "threshold obstacle" of legislative immunity; the Circuit Court in reversing the lower court, concluded that the Legislature was immune in this particular case.

"The Supreme Court has not held that a derivative action under the Constitution may be created to avoid the limitations of a Section 1983 action; that to do so in this case would be to abrogate the doctrine of legislative immunity; and that doing so would be imprudent in view of the congressional inaction on the subject." *Colón Berríos*, at 89.

It was the Circuit Court's opinion that "investigations constitute an essential component of the legislative process ... and to construe the sphere of legitimate legislative activity in any narrower fashion might permit federal district courts to enjoin state legislative discussion of any matter that was the subject of a pending federal criminal or civil case." *Colón Berríos*, at 90. In contrast, the language found in *Davis v. Passman*, 544 F.2d 865 (5th Cir.1977) indicates that there is, nonetheless, a limited nature of immunity. For example, in admonishing the members of Congress regarding a staff member's dismissal, the Fifth Circuit has stated:

"Peripheral or tangential activities of a representative must not be confused with the legislative core. A representative's transgressions are not given absolute absolution. The Constitution establishes an immunity for aberrations in a representative's legislative activities, but members of Congress become mere mortals when they operate in more mundane fields." *Davis v. Passman*, at 880.

■ For all of the above stated reasons, the Court finds that the legislature of Puerto Rico, under the United States Constitution, is protected when it acts in a legitimate legislative activity. In this case, when the Legislature subpoenaed plaintiff, it is presumed that it was acting within its legitimate legislative function. Therefore, the civil rights of plaintiff are not violated

under Section 1983 of the Civil Rights Act and consequently, the subpoena is proper.

This conclusion should not be interpreted as to giving the Legislature a *carte blanche* in its dealing with citizens and their rights. This concern of the Court is of actuality in view of the fact that attorney for the defendant, during the hearing, stated that the Legislative immunity was absolute and that the Committee could hold "McCarthy" type hearings.

When this Court defers to the members of the Puerto Rican Legislature, this Court yields to a legitimate Branch of Government. This Court, however, will neither abandon nor relinquish the civil liberties of citizens in the face of legislative committees which fail to hear and abide by their democratic responsibilities. Congress is the voice of the people. Committees are not Congress and committees do not always yield to the voice of congressional control. Courts must and shall flexibly oversee the legislative procedure to avoid crass abuses. Shapiro, *Judicial Review: Political Reality and Legislative Purpose: The Supreme Court's Supervision of Congressional Investigations,* 15 Vanderbilt Law Review, 535, 555 (1962).

The new approach of this judicial balancing, as addressed by Professor Shapiro, is not to whittle away the lawmaking powers of the Legislature and not to aggrandize the position of this Court. The new approach would recognize the *real moving force* behind our Republic which is the protection of our citizen's natural and civil rights. The three branches of Government would retain their innate rights as viewed against each other. Instead, the Court would assume its traditional role of referee between the Legislature and the Executive in an area where the Constitutional powers conflict. Shapiro, *Judicial Review of Investigations,* 553.

The exposition of these concepts is not novel. Ancient Rome was made great essentially because the abuse of official power was not tolerated. A Roman was made to feel as a Roman, coupled with the fact that the laws were mainly directed at protecting the rights and personal liberty of the individual citizen. These concepts were the basis of a sense of Republican Freedom, which is the tradition of Republicanism incorporated in the Constitution by the Founding Fathers of the United States. It is precisely the failure of the Romans to adhere and respect these basic concepts of individual rights which precipitated the downfall of their Republic. From these concepts, justice and the formula "summum vis summa iniuria" (right taken to extremes makes the greatest wrong) come the essence of our laws.

This separation of power concept is a balance which in reality is an aid to ensure that the rights of the people are paramount. Shapiro, in his article at page 554, has exposed the necessary steps in permitting the Courts to acknowledge and balance these rights.

> The whole technique of balancing individual freedoms against society's interests in government activities interfering with those freedoms would greatly benefit from the abandonment of the demand for and presumption of legislative purpose. If balancing always begins by throwing the whole lawmaking power of Congress on one side of the scale, particularly the power to legislate in the interest of national security, the individual rights invaded by investigation must almost always come up light. The actual purposes of investigations frequently do not carry nearly so heavy a weight of social interest. Conversely, the exposure purpose of many inquiries presents a particularly grave danger to freedom of speech and association. By recognizing exposure as a normal purpose of investigations, while at the same time stressing its potential danger to individual rights, the Court could begin to act as a real balancer of interest, striking down those inquiries which needlessly destroy constitutional liberties and upholding those in which exposure of some danger or misdeed is essential to our society.

Therefore, 'intemperate' behavior or conduct resulting from the brutality of politi-

cal extremism on the part of members of the committees investigating citizens, which transcends and disintegrates the civil rights of people, will not be considered within the immunity of the legislature. This behavior would be stressing a right to the extreme and, if it becomes oppresive, it ceases to be a right altogether.

We stress that judicial deference to the Legislature in the case at bar entails Judicial independence in refereeing the Executive and Legislative clashes. This is not however, Judicial subjugation to the abuses of either Branch.

Therefore, for the above stated reasons, the present action is hereby DISMISSED.

The Clerk shall act accordingly.

IT IS SO ORDERED.