Miguel A. Hernandez AGOSTO,
President of the Senate of
Puerto Rico, Plaintiff,

v.

Carlos Romero BARCELO, Governor of
the Commonwealth of Puerto
Rico, Defendant.

Civ. No. 84–2186(PG).

United States District Court,
D. Puerto Rico.

Sept. 27, 1984.

Amancio Arias Cestero, Santurce, P.R., Hughes, Hubbard & Reed, Washington, D.C., for defendant.

Marcos Ramirez, Hato Rey, P.R., for plaintiff.

## OPINION AND ORDER

PEREZ-GIMENEZ, District Judge.

The plaintiff has moved for a remand of this case to the Superior Court of Puerto Rico. The defendant (hereafter "the Governor") has opposed the motion, and the Court held a hearing on the issues on September 7, 1984. Having carefully considered the briefs and arguments for both sides, the Court concludes that this case was properly removed and denies the motion to remand.

### I

This case grows out of the killing of two men by the police at Cerro Maravilla on July 25, 1978. Charges of police misconduct and of an official cover-up have spawned various investigations and criminal indictments. Among the investigations is one being conducted by the Judiciary Committee of the Senate of Puerto Rico. That investigation began in 1981 pursuant to Senate Resolution No. 91, which directed the Committee (1) to submit to the Senate recommendations for legislation and (2) to report to the Senate on the Cerro Maravilla incident and recommend how best the Senate could disseminate the information to the public. The Committee's investigation has included dramatic hearings televised throughout Puerto Rico.

On April 27, 1984, the Committee, through its Chairman, served a subpoena on the Governor of Puerto Rico demanding the production of various documents and other information. The subpoena set a return date of May 11, 1984.

On May 11, 1984, Virgilio Ramos González, counsel to the Governor, wrote to the Committee on behalf of the Governor. He indicated that the Governor refused to comply with the subpoena on a number of different grounds. (The grounds were described in detail in a lengthy opinion from the Secretary of Justice to the Governor, dated May 9, 1984, which Mr. Ramos attached to his May 11 letter.) First, through Mr. Ramos, the Governor asserted that he and his aides had already produced much of the information subpoenaed in response to earlier requests from the Committee. To the degree the subpoena asked for new material, the Governor objected that it sought information that was irrelevant to the investigation and that the demand for documents was unreasonable, oppressive, arbitrary and burdensome. Second, the Governor contended that the subpoena has been improperly issued because, *inter alia*, the Committee has prevented Senators from the parliamentary minority party from participating in the Committee's proceedings and because the Committee allegedly lacks the authority to compel compliance with a subpoena once the Legislative Assembly has adjourned *sine die* in anticipation of a general election, which it did on April 30. The Committee's authority lapsed, the Governor asserted, both because the investigation could no longer serve the purposes for which it had been authorized and because the Senate lacked the power to extend the life of one of its committees past such an adjournment. Third, and most importantly for present purposes, the Governor asserted that the Committee lacked authority under the "separation of powers" to demand that he produce confidential information and that the subpoena sought material protected by executive privilege and other similar privileges of the executive branch.

On May 14, 1984, the Committee (allegedly still acting without allowing any members of the minority party to participate) passed a resolution calling upon the plaintiff, in his capacity as President of the Puerto Rico Senate, to seek judicial enforcement of the April 27 subpoena. How-

ever, it was not until August 20, 1984, that the plaintiff petitioned the Superior Court of Puerto Rico in an effort to enforce the subpoena. The petition was considered on an *ex parte* basis, and on August 21, 1984, the Superior Court issued an *ex parte* order directing the Governor to comply with the subpoena in full by August 30, 1984.

Immediately upon notification of those proceedings and of the court order against him, the Governor filed a petition removing the case to this Court. He also filed a motion seeking a stay of the August 21 order pending submission of a motion to vacate that order. The plaintiff then filed a motion to remand this case to the Superior Court. On August 28, this Court issued an Order to Show Cause, directing the Governor to show why the case should not be remanded to the Superior Court. In that same Order, the Court stayed the Superior Court's August 21 order until this Court "has had an opportunity to hear arguments of counsel and consider the matters presented to it by this case." The Governor filed a brief in opposition to remand on September 5, and the hearing was held as scheduled on September 7, at which both parties appeared through counsel.

## II

Section 1441 of Title 28, United States Code, governs the removal of this case. Section 1441(a) states that:

"any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." [1]

Section 1441(b) reiterates that

"any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

1. 48 U.S.C. § 864 makes the removal provisions of Title 28 applicable to removal from the

Two issues, therefore, must be addressed in determining whether this case was properly removed from the Superior Court or must be remanded to that court. First, whether the plaintiff's petition for enforcement of a legislative subpoena is a "civil action" within the meaning of Section 1441. Second, whether this is a case "arising under" the laws of the United States so that this Court would have had original jurisdiction if the plaintiff had chosen to commence the case here. Because the Court answers both questions in the affirmative, it concludes that removal was proper.

### A.

Although the Court has not found any case squarely on point, and the parties have not referred the Court to any precise precedent, the Court concludes that Congress intended to use the term "civil action" in Section 1441(a) in its broadest possible scope. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3721 at 524 (1976). Indeed, the plaintiff here apparently does not deny that his subpoena enforcement petition is a "civil action" for this purpose.

As used in Section 1441, " 'civil action' is a civil suit." *Stoll v. Hawkeye Casualty Co.*, 185 F.2d 96, 98 (8th Cir.1950). The term "suit,", in turn,

"is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit." *Weston v. City of Charleston*, 2 Pet. 449, 464, 7 L.Ed. 481 (1829) (per Marshall, C.J.).

This case presents just such an instance in which the plaintiff seeks a remedy, enforcement of a subpoena, in a civil proceeding;

courts of Puerto Rico to this Court.

that application requires adjudication of a claim of right, the right to compel the production of the documents in question.

The fact that the proceeding began on an *ex parte* basis does not affect this analysis. The initial proceeding in this case may have occurred on an *ex parte* basis, but the action eventually requires a confrontation between the plaintiff and defendant (on a motion to vacate or a contempt proceeding), and that confrontation would involve an adjudication of their respective rights in a civil proceeding. Plaintiff's petition, therefore, falls within the meaning of "civil action."

The removal statute, in fact, expressly contemplates the removal of such a matter. Section 1446(b) states that a petition for removal "of a civil action or proceeding" must be filed by the defendant within thirty days from the time that the defendant receives a copy of the "initial pleading," "through service or otherwise," or receives "service of summons" without the initial pleading where that is permitted by the local courts. The statute, therefore, expressly envisions cases where the defendant has not yet had an opportunity to appear at the time of removal or has not yet even been served with process or with a pleading.

■■■ This analysis is confirmed by the courts' consistent recognition that proceedings which begin on an *ex parte* basis are "civil actions." First, it is well settled that a "civil action" under the federal-question jurisdiction statute, 28 U.S.C. § 1331, includes proceedings in which an *ex parte* order such as a temporary restraining order or a writ of attachment issues before the defendant has had an opportunity to respond to the "initial pleading" or even to appear. The provisions of the removal statute relied upon in this case are essentially *in pari materia* with the federal-question original jurisdiction provisions of 28 U.S.C. § 1331. *Debevoise v. Rutland Railway Corp.*, 291 F.2d 379, 380 (2d Cir.), *cert. denied*, 368 U.S. 876, 82 S.Ct. 123, 7 L.Ed.2d 77 (1961); *see*, Wright, Miller & Cooper, *supra*, § 3722 at 556. The Supreme Court has repeatedly held that Congress made the removal statute co-exten-sive with the grant of federal-question jurisdiction. *See, e.g., Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, ——, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983). Furthermore, when a term is used in different statutes but in the same context and in a similar manner, the courts are to presume that Congress intended the later use of the term to be construed in the same way as its earlier use. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); *Northcross v. Memphis Board of Education*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). Therefore, the term "civil action" under § 1441 encompasses proceedings that may have begun on an *ex parte* basis if the Court would have had federal-question jurisdiction over the application, as the Court concludes (in Part B, *infra*) is the case here.

Second, and most compelling, the removal statutes have been construed to apply to garnishment and attachment proceedings, which routinely commence with an application for, and issuance of, an *ex parte* order. *See, e.g., Williams v. Williams*, 427 F.Supp. 557, 560 n. 8 (D.Md.1976); *see generally*, Wright, Miller & Cooper, *supra*, § 3721 at n. 40. In fact, the only issue which has caused difficulty for the courts in such cases is whether the attachment proceedings are merely "ancillary" to the main action; they have not been concerned by the *ex parte* initiation. *Id.* In this case, we are not facing an ancillary proceeding of any sort: the petition filed by the plaintiff triggered the need to adjudicate the rights as between the parties in a civil proceeding. For all these reasons, therefore, this Court is convinced that this judicial proceeding is "civil action" within the meaning of Section 1441(a).

B.

■■ Plaintiff vigorously contends that there is no federal-question jurisdiction to entertain this proceeding. At the hearing, counsel for plaintiff argued strenuously that this Court cannot have jurisdiction because

federal law does not create a cause of action authorizing the Puerto Rico Senate or its committees to sue for enforcement of legislative subpoenas. That, however, is not the controlling inquiry.

The issue of federal-question jurisdiction cannot be addressed successfully with facile analysis. As the United States Supreme Court only recently reemphasized, "the statutory phrase 'arising under the Constitution, laws or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Franchise Tax Board, supra,* 463 U.S. 1, ——, 103 S.Ct. at 2846. Nevertheless, the Supreme Court carefully pointed out in that case, on which plaintiff places heavy reliance, that federal-question jurisdiction is not limited to instances in which federal law "creates the cause of action." *Id.* at 2846. Instead, there is federal jurisdiction over a claim, even if state law creates the underlying right to seek relief, "where the vindication of a right under state law necessarily turned on some construction of federal law." *Id.* Phrased another way, if the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties," then a federal court has jurisdiction to resolve the controversy. *Id.* at 2848; *see also, Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965) ("a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law"); *Puerto Rico v. Sea-Land Service, Inc.,* 349 F.Supp. 964, 968 (D.P.R.1970). With these guides in mind, we now turn to an analysis of the case before us.

Plaintiff's petition for enforcement, at bottom, is a claim that a committee of the Puerto Rico Senate had the legal power to issue the April 27 subpoena to the Governor and has the right to judicial aid in requiring the Governor to comply with it. The Governor declined to produce the information that had not already been turned over, resting on the separation of powers between the branches of government as a basis for refusing to do so. The issue raised by the petition, therefore, is whether the legislature has the authority to overcome the autonomy of the executive branch and to enlist the judicial branch's assistance in compelling the Governor to turn over material that he has decided, as the head of a coordinate branch of the government, not to release voluntarily. The plaintiff's claim cannot be resolved without settling issues concerning the powers of the branches of the Puerto Rico government with respect to one another. These issues are controlled by federal law and arise as part of plaintiff's claim of right, not merely by way of defense.

■ We turn first to the reasons why federal law governs the determination of the relative rights and obligations of the political branches of the Puerto Rico government when those branches are in conflict. The Puerto Rico Constitution exists by virtue of the 1950–52 "Compact" between the United States and Puerto Rico. That Compact is presently embodied in the Puerto Rico Federal Relations Act, 48 U.S.C. § 731b *et seq.* That Act placed— and continues to place—certain restrictions on the government that was to be established, including maintenance of a tripartite government based on principles of separation of powers. The Act requires "a republican form of government," 48 U.S.C. § 731c, the hallmark of which is the separation of powers among coordinate branches of government. *See, Buckley v. Valeo,* 424 U.S. 1, 119, 96 S.Ct. 612, 682, 46 L.Ed.2d 659 (1976); *United States v. Nixon,* 418 U.S. 683, 705–14, 94 S.Ct. 3090, 3106–10, 41 L.Ed.2d 1039 (1974); *In Re Duncan,* 139 U.S. 449, 461, 11 S.Ct. 573, 577, 35 L.Ed. 219 (1891); *Minor v. Happersett,* 88 U.S. (21 Wall.) 162, 175–76, 22 L.Ed. 627 (1875); *see also, The Federalist,* No. 9 at 72; No. 47 at 301; No. 51 at 321; No. 66 at 401 (New Amer.Lib.Ed.1961); *see generally, Luis v. Dennis,* 576 F.Supp. 733 (D.V.I.1983) (doctrine of separation of pow-

ers underlies division of government into executive, legislative and judicial branches).

The Puerto Rico Constitution in fact established such a government, including the same separation of powers that is embodied in the United States Constitution.[2] The Constitution went into effect, moreover, only because of the formal approval of Congress and the President, which approval was based, in part, on the adoption of the same separation of powers as is part of the United States Constitution in satisfaction of the requirement of a "republican form of government." *See*, H.R. No. 82–1832, 82d Cong., 2 Sess. (1952), *reprinted in* (1952) U.S.Code Cong. & Admin.News 1892, 1898, 1900, 1902.

Moreover, that approval was conditioned on the proviso that the people of Puerto Rico add a specific amendment to their Constitution, stating that

"Any amendment or revision of this constitution shall be consistent with the resolution enacted by the Congress of the United States approving this constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act and with Public Law 600, Eighty-First Congress, adopted in the nature of a compact." P.L. 82–447, *reprinted in* (1952) U.S.Code Cong. & Admin.News 321.

In accordance with that mandate, such a provision was added to the Puerto Rico Constitution (Art. VII, § 3). Since the basic terms of the Compact continue in force as part of the Puerto Rico Federal Relations Act, the provisions of the Puerto Rico Constitution, including the relationships among the branches of the Puerto Rico Government, are presently and permanently restricted by federal law and federal principles.

Because the powers of the branches of Puerto Rico government vis-a-vis one another continue to be governed by reference to the principles embodied in the underlying federal statutes, the power of the legislature to override or invade the prerogatives of the executive branch can only be determined by reference to controlling federal law. *See, Springer v. Government of the Philippine Islands*, 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845 (1928); *Camacho v. Civil Service Commission*, 666 F.2d 1257 (9th Cir.1982) (Commonwealth of the Northern Mariana Islands); *cf. Luis v. Dennis, supra.*

At the hearing on the motion to remand, counsel for the plaintiff insisted that it is not the business of the federal courts to assure the proper separation of powers within the Government of Puerto Rico. In two other cases in which the plaintiff here was a party, however, two other judges of this Court have reached precisely the opposite conclusion and have forcefully declared that under the system created by Congress and accepted by the people of Puerto Rico, the federal courts have the ultimate responsibility for maintaining the proper relationships between the executive and legislative branches when those branches become embroiled in a justiciable dispute, such as over the enforceability of a legislative subpoena to the Governor.

In *Ana Culpeper v. Hernández Agosto*, Civil No. 84–1586 (TR) (D.P.R. June 25, 1984), another member of this Court faced a similar case involving the power of the legislature to compel a subordinate official of the executive branch to cooperate with a legislative investigation. The Court explicitly rejected the notion that the issue was exclusively one for the local Puerto Rico courts to decide, stating that "at least as regards unincorporated territories and 'commonwealths,' Congressional oversight pursuant to the Territorial Clause of the Constitution requires that federal courts

---

**2.** *Compare, e.g.,* U.S. Const., Art. I, § 1 *with* P.R. Const., Art. III, § 1 (legislative power); U.S. Const., Art. I, § 6 cl. 2 *with* P.R. Const., Art. III, § 15 (ineligibility and incompatibility clause); U.S. Const., Art. I, § 7 *with* P.R. Const., Art. III, § 19 (bicameral requirement and presentment/veto clause); U.S. Const., Art. II, § 1 *with* P.R. Const., Art. IV, §§ 1 & 4 (executive power); U.S. Const., Art. II, § 2 *with* P.R. Const., Art. IV, § 4 cl. 3 & § 5 (appointments clause); U.S. Const., Art. I, § 9 cl. 3 *with* P.R. Const., Art. II, § 12 cl. 2 (bills of attainder); U.S. Const., Art. III, § 1 *with* P.R. Const., Art. V, § 1 (judicial power).

guarantee separation of powers between the various branches of local government." Slip op. at 6 (footnotes omitted). Similarly, in *Martinez Acosta v. Hernández Agosto*, 590 F.Supp. 144 (1984), another dispute over the power of legislative committees vis-a-vis executive branch officials, the Court recognized its obligation to "assume its traditional role of referee between the Legislature and the Executive in an area where the Constitutional powers conflict." at 149. While the Court concluded in that particular instance that no judicial action was warranted, it reaffirmed its jurisdiction to take action: "Courts must and shall flexibly oversee the legislative procedure to avoid crass abuses .... This separation of power concept is a balance which in reality is an aid to ensure that the rights of the people are paramount." *Id.* at 149. The Court concluded, "We stress that judicial defence to the Legislature in the case at bar entails Judicial independence in refereeing the Executive and Legislative clashes." *Id.* at 150.

This Court does not forecast how it will rule on the merits of the present dispute between a legislative committee and the Governor, but, as in those earlier cases, it is properly within the power and jurisdiction of the Federal Court to resolve the legal merits of the controversy. The question whether judicial action is appropriate to enforce the plaintiff's claim of right can only be answered by reference to principles of federal law.

■ Because issues of federal law so pervade and are integral to the determination of the plaintiff's right to the relief he seeks, the case "arises under" federal law within the meaning of 28 U.S.C. §§ 1331 and 1441. The fact that the complaint nominally asserts only a "state" law claim does not require a different conclusion, as a long line of precedents demonstrates. *See, e.g., Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Oneida Indian Nation v. Oneida,* 414 U.S. 661, 677, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974); *Christopher v. Cavallo,* 662 F.2d 1082 (4th Cir.1981); *Sheeran v. General Electric Co.,* 593 F.2d 93, 96 (9th Cir.), *cert. denied,* 444 U.S. 868,

100 S.Ct. 143, 62 L.Ed.2d 93 (1979); *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229 (2d Cir.1978); *Puerto Rico v. Sea-Land Service, Inc., supra; Sweeney v. Abramovitz,* 449 F.Supp. 213 (D.Conn.1978); *Chengfan Hsu v. Philippine Air Lines, Inc.,* 98 F.Supp. 805 (N.D.Cal.1951); *Gates v. Council of City of Huntington,* 93 F.Supp. 757 (S.D.W.Va. 1950).

Perhaps the most important guidance is provided by the Supreme Court decision in *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), cited with approval in that Court's recent *Franchise Tax Board* decision, 463 U.S. 1, ——, 103 S.Ct. at 2846. The Court held in *Smith* that federal jurisdiction existed despite its agreement with Justice Holmes' dissent that the cause of action was created by state law and turned at least in part on the powers of a board of directors under state law. The underlying issue of the plaintiff's right to relief also required consideration of federal law issues —namely, the constitutional validity of an act of Congress. Therefore, the case "arose under" federal law because federal law was "directly drawn in question." 255 U.S. at 201, 41 S.Ct. at 245.

Nothing in *Gully v. First National Bank, supra,* on which plaintiff relies, contradicts the conclusion that this Court has jurisdiction over this case. There, the plaintiff sought to collect taxes owed by a national bank. The bank argued that simply because the right to tax national banks derived from a federal statute, federal-question jurisdiction existed and the case could be removed. However, there was no question in the case about the right of the State to collect taxes; the federal law was therefore irrelevant to the controversy. The bank had asserted that "because permission at times is preliminary to action the two are to be classed as one." 299 U.S. at 116, 57 S.Ct. at 99. The Court quite correctly held that merely because federal law "permitted" taxation, the case did not thereby arise under federal law. To a similar effect, see *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 483, 53 S.Ct. 447, 449, 77

L.Ed. 903 (1933), where the Court held that federal-question jurisdiction did not exist where the plaintiff's right to assess the tax at issue derived from permission granted by federal statute, but no question of the interpretation or application of that statute was at issue.

Here, in contrast, the nature and extent of authority permitted and established by federal law is very much at issue in the plaintiff's case. The issues here are whether and to what extent the 1950–52 Compact empowers the Puerto Rico legislative committee to subpoena the Governor and requires the courts to come to the aid of the legislature in enforcing such a subpoena when the Governor has refused to yield additional confidential information voluntarily. These federal questions are not merely peripheral or defensive: they lie at the heart of the plaintiff's claim that he has the right to obtain a judicial order commanding the Governor to subordinate his judgments and prerogatives to those of a coordinate branch. Therefore, the clear weight of authority requires this Court to acknowledge its jurisdiction to hear this case as one "arising under" federal law.

Plaintiff argues for the opposite conclusion based principally on two propositions: (1) his cause of action is stated under 2 L.P.R.A. § 154a, and (2) he does not plead a federal law issue on the face of his complaint. However, his reasoning is founded upon two misunderstandings of the precedents guiding the proper analysis of federal jurisdiction.

First, plaintiff appears to believe that federal law must "create" the cause of action pleaded in order for federal-question jurisdiction to exist. That test, originally articulated by Justice Holmes in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), however, "is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction." *Franchise Tax Board, supra*, 463 U.S. 1, ——, 103 S.Ct. at 2846. Confirmation of the limited usefulness of the "cause of action" test is found in *Smith v.*

*Kansas City Title & Trust Co., supra.* There, Justice Holmes argues in dissent that there was no federal-question jurisdiction to support removal because the complaint clearly stated a cause of action only under state law. The majority of the Supreme Court, however, *upheld* removal of the case because federal-question jurisdiction does not depend solely on whether the complaint rested on a cause of action created by state law. *See* p. 1397 *supra.*

Instead, the test stated in *Gully v. First National Bank, supra*, more accurately states the necessary relationship between the cause of action and the federal issue which establishes federal-question jurisdiction: the issue of federal law must be "an element, and an essential one, of the plaintiff's cause of action," even if state law creates the cause of action. 299 U.S. at 112, 57 S.Ct. at 97. Federal-question jurisdiction exists where the plaintiff's claim "will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Id.* That is precisely the situation presented in this case, because plaintiff's ruling on the scope of authority ceded to the legislative committee under federal law.

Second, the plaintiff relies on his interpretation of the "well-pleaded complaint" rule to argue that, because his petition does not, on its face, allege any issue of federal law, but rather merely seeks enforcement of the subpoena under 2 L.P. R.A. § 154a, no federal-question jurisdiction can exist. However, the "lack of any reference to federal law in the complaint is not controlling." *North American Phillips Corp. v. Emery Air Freight Corp., supra*, 579 F.2d at 233. The test is "whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law." *In re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). Claims with a "sufficient federal character" are subject to removal, "regardless of plaintiff's characterization" or "artful

pleading." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981).

An examination of the Supreme Court's discussion of the "well-pleaded complaint rule" in the *Franchise Tax Board* decision clarifies the meaning of that doctrine: it is merely another way of stating the principle that jurisdiction may not be based on federal issues that arise solely as a matter of defense. 103 S.Ct. at 2846–48. It is not, as the plaintiff seeks to make it, a doctrine of formal pleading. Such an interpretation of the "well-pleaded complaint" rule would conflict with the most fundamental modern day principle of federal court jurisdiction— "notice pleading." Notice pleading recognizes that what is critical in a complaint is the statement of alleged facts, not a legal theory organizing the facts. The Federal rules explicitly declare that a plaintiff is entitled to whatever relief is appropriate under the facts shown, whether or not demanded in his complaint. Rule 54(c), Fed. R.Civ.P.

Just as a plaintiff need not plead any legal theory in order to establish federal jurisdiction and a right to relief, the fact that the plaintiff does plead a particular statute or legal theory neither creates nor negates jurisdiction. *See Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir.1980); *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir.1978); *Thompson v. Allstate Insurance Co.*, 476 F.2d 746, 749 (5th Cir.1973). Rather, the court must determine for itself whether the facts alleged state a case falling within federal-question jurisdiction. Similarly, while the determination of jurisdiction that supports removal must be made from the facts raised by the plaintiff's complaint, it is the Court's responsibility to determine if those facts, as alleged, necessarily make the plaintiff's right to any relief turn on the resolution of some disputed issue of federal law. If so, there is federal-question jurisdiction, which the defendant may invoke to support removal even if the plaintiff would prefer to press his claim in a local court.

Plaintiff argues that "[i]t would be patently absurd to argue that Plaintiff in this case is asserting any sort of right, privilege or immunity under the Constitution or any law of the United States" because his only statutory basis for seeking enforcement is 2 L.P.R.A. § 154a. For reasons already discussed, the existence of a state cause of action does not mean that, despite the central importance of a federal issue in determining the plaintiff's right to relief, the case does not arise under federal law. Moreover, the fact that different remedies might be available in state court does not eliminate federal-question jurisdiction. *See Avco Corp. v. Aero Lodge No. 735, supra,* 390 U.S. at 561, 88 S.Ct. at 1237; *Sheet Metal Workers International Assoc. v. Seay,* 693 F.2d 1000, 1003–04, *as modified,* 696 F.2d 780 (10th Cir.1983); *Suffolk v. Long Island Lighting Co.,* 549 F.Supp. 1250, 1257 (E.D.N.Y.1982). In fact, this Court has all the necessary authority to grant the plaintiff any relief that may be appropriate in this case if the plaintiff shows in a subsequent proceeding that he has a right to relief. *See* 28 U.S.C. § 1651 (All-Writs Act).

Second, as also explained earlier, jurisdiction does not depend on the plaintiff expressly "asserting" a right under federal law, but rather depends on whether the case "arises under" federal law because the determination of the plaintiff's right to relief, exclusive of defenses, turns on federal law issues. The plaintiff argues that all federal issues here arise merely by way of defense. Even if that objection would be sound in the ordinary case seeking enforcement of a legislative subpoena, it is not true when the case concerns the right to enforcement of a legislative subpoena against the Governor, after the Governor has invoked the autonomy of his office as a reason for refusing to produce information. Such an enforcement action raises threshold issues of separation of powers and the proper limitations on the powers of each branch of government vis-a-vis the other branches.

The Senate Committee here demanded documents in its subpoena; the Governor asserted his right, as head of a coordinate branch of government, not to defer to the Committee's demand. Once the Governor

asserted a right not to release the information to the legislature—as he did here in the May 11 letter—the material is "'presumptively privileged,'" and in order to obtain judicial enforcement of its position the legislature must bear the affirmative burden of showing as part of its case that its need for the information is so great that the Court should disturb the *status quo* between the two branches and order disclosure. *See Senate Select Committee on Presidential Campaign Activities v. Nixon,* 498 F.2d 725, 730 (D.C.Cir.1974) (*en banc*); *see also, United States v. Nixon,* 418 U.S. 683, 708, 713, 94 S.Ct. 3090, 3107, 3110, 41 L.Ed.2d 1039 (1974). Under the principle of separation of powers, the legislature, acting through the plaintiff, must demonstrate why the Court should overturn the Executive's determination of its prerogatives vis-a-vis the legislature's demands. This requirement arises from the limitation placed on "a court's power to review or interfere with the conclusions, acts or decisions of a coordinate branch of government made within its own sphere or authority." *Hamilton v. Verdow,* 414 A.2d 914, 921 (Md.1980). Therefore, the separation of powers issues do not arise merely in the Governor's defense to this action, but are an integral part of the plaintiff's burden of showing that he has a right to obtain judicial enforcement of the subpoena against the Chief Executive. Hence, all of the requirements for federal-question jurisdiction are met here.

### III

The Court concludes that this case was properly removed under 28 U.S.C. § 1441 and, therefore, DENIES the plaintiff's motion to remand. There remains outstanding the Superior Court's August 21 order directing the Governor to comply with the Committee's subpoena in full. Obviously, at this point the Governor could not strictly comply with that order even if he wished to do so because it set August 30 as the date to hand over the material. In any event, as the Governor argued in his Motion for a Stay before this Court, the proper course is to allow the Governor an opportunity to challenge the propriety of the enforcement order without requiring him to place himself in contempt of court. *See United States v. Nixon,* 418 U.S. 683, 689, 691–92, 94 S.Ct. 3090, 3098, 3099–3100, 41 L.Ed.2d 1039 (1974). Therefore, the Court will continue the stay of the August 21 order pending filing and disposition of a motion to vacate that order, on condition that the Governor file any such motion, with supporting papers, within ten days of the filing of this Opinion and Order.

The related Complaint for Declaratory and Injunctive Relief filed by the Governor on September 5, 1984, against the President of the Senate of Puerto Rico, the Chairman and members of the Judiciary Committee of the Puerto Rico Senate, under Civil Case No. 84–2248, is hereby consolidated with the case at bar.

IT IS SO ORDERED.