Miguel HERNANDEZ–AGOSTO, President of the Senate of Puerto Rico on his Behalf and as Representative of the Senate of Puerto Rico and of the Judicial Commission of the Senate, Plaintiff, Appellant,

v.

Carlos ROMERO–BARCELO, Governor of the Commonwealth of Puerto Rico, Defendant, Appellee.

No. 84–1802.

United States Court of Appeals, First Circuit.

Argued Oct. 11, 1984.

Decided Oct. 23, 1984.

Marcos A. Ramirez Lavandero, Hato Rey, P.R., with whom Marcos A. Ramirez and Ramirez & Ramirez, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Philip A. Lacovara, Washington, D.C., with whom Geoffrey F. Aronow, Roger P. Fendrich, William H. Voth, Hughes, Hubbard & Reed, Washington, D.C., and Amancio Arias Cerstero, Santurce, P.R., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and BREYER, Circuit Judges.

PER CURIAM.

The Senate of Puerto Rico asks us to issue a writ of mandamus requiring the federal district court to return to the Commonwealth courts the Senate's "subpoena enforcement action" against the Common-

wealth's Governor. The Senate issued the subpoena in question in April 1984, in connection with its investigation of events at Cerro Maravilla. In May, the Governor told the Senate he would not comply. In August, the Senate (through its President) asked the Commonwealth's Superior Court to issue an order (under the legal authority of Puerto Rico Political Code, § 34–A, 2 L.P.R.A. § 154a) requiring the Governor to comply with the subpoena. The Commonwealth court issued the order. The Governor removed the case to the United States District Court for the District of Puerto Rico. *See* 28 U.S.C. § 1441. That federal court refused the Senate's request for remand. 594 F.Supp. 1390. *See* 28 U.S.C. § 1447(c). The federal court stayed the Commonwealth court's compliance order pending further federal proceedings. The Senate now appeals and in the alternative asks for a writ of mandamus requiring a remand. Treating the appeal as a request for a writ, and for the reasons given below, we grant the writ of mandamus that the Senate seeks.

## I

 The Governor sought to remove this case to federal court under the authority of 28 U.S.C. § 1441. That provision allows removal of a case presenting "a claim or right arising under the Constitution, treaties or laws of the United States ...." The Supreme Court of the United States has made clear that, in deciding (for removal purposes) whether a case presents a federal "claim or right," a court is to ask whether the plaintiff's *claim to relief* rests upon a federal right, and the court is to look only to *plaintiff's complaint* to find the answer. *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) ("right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action"); *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, ——, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983) ("defendant may not remove a case to federal court unless the *plaintiff's* complaint

established that the case 'arises under' federal law"); *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914) ("whether a case is one arising under [federal] ... law ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration"); *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 3 (1st Cir.) (case law requires that the "elements of the federal claim appear on the face of the state court complaint, without reference to other documents"), *cert. denied,* —— U.S. ——, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983). In this instance, the Senate's state court "complaint" (a petition for enforcement) makes no reference to federal law; it bases its right to enforcement of the subpoena entirely upon the law of the Commonwealth of Puerto Rico, namely, Political Code § 34–A. Thus, under *Franchise Tax Board, Gully, Bonanno,* and a host of other cases, § 1441 does not authorize removal of the case to federal court. (*See* Appendix for text of the Complaint.)

 The Governor makes a two-step argument in an effort to escape the authority of these cases. First, he claims that the Senate's court action involves a federal issue, namely, whether enforcement of the subpoena would violate a federal requirement that Puerto Rico's Constitution provide "a republican form of government." 48 U.S.C. § 731c. He recognizes, however, that this claim is insufficient, for the simple involvement of a federal issue in a case does not authorize removal if that involvement arises by way of a federal *defense. Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. at ——, 103 S.Ct. at 2847. Justice Cardozo pointed out in *Gully,* not only that the federal controversy "must be disclosed on the face of the complaint, unaided by the answer or petition for removal" but also that not even "the complaint itself" provides a basis for jurisdiction "in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable *defense.*" 299 U.S. at 113, 57 S.Ct. at 98

(emphasis added). And the Supreme Court recently reiterated that "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts ... that a federal *defense* the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at ——, 103 S.Ct. at 2846–47 (emphasis added). *See Taylor v. Anderson, supra* (federal claim must be determined from complaint "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose"). Thus, the Governor adds a second step to his argument. He says that the federal argument is so important that it (or its denial) is an inextricable part of the plaintiff's *affirmative* case. Although the district court accepted this argument, we do not find it convincing for several reasons.

In the first place, a natural reading of the pleadings in this case suggests that the "republican form of government" argument is at best a defense. The plaintiff seeks a Commonwealth court 'subpoena enforcement' order, the right to which (it says) is granted by Commonwealth law. The defendant argues that if Commonwealth law provides such a right, it unconstitutionally conflicts with a federal statute. The defendant adds that the Senate bears the burden of disproving this federal contention. But burdens of proof are beside the point, for the simple fact is that the federal issue would not appear in the case unless defendant chose to assert it. That fact, in this context, militates strongly in favor of calling the issue a 'defense' regardless of who bears whatever proof burdens may be relevant. (Compare the insanity *defense*, which a court considers only if defendant raises the matter, but which, once raised, the prosecutor has the burden of disproving. *Davis v. United States*, 160 U.S. 469, 486–88, 16 S.Ct. 353, 357–58, 40 L.Ed. 499 (1895).)

In the second place, to view this defense as part of the plaintiff's claim runs counter to Supreme Court authority. We know that there are unusual cases in which a federal court will look beyond the literal words of a plaintiff's complaint, preventing him from defeating "removal by omitting to plead necessary federal questions." *See Avco Corp. v. Aero Lodge No. 735*, 376 F.2d 337, 339–40 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at ——, 103 S.Ct. at 2852. But these cases have focused on such matters as state labor law claims—brought in an area that federal labor law *totally occupied*. Thus, the Supreme Court has written that

... if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at ——, 103 S.Ct. at 2854. Yet, while writing these very words about labor law cases, the Supreme Court held that a state law tax-related claim to money held by a federally regulated pension fund could *not* be removed, even though the complaint itself revealed that the sole issue in the case was whether federal pension law preempted the state law on which the plaintiff rested its claim. The Supreme Court held that the plaintiff (a California state tax board) asserted a claim under *state* law. While plaintiff's complaint raised the federal issue, it did so, says the court, by way of anticipating a *defense*. *Id*. at ——, 103 S.Ct. at 2854. There is no more reason here than in *Franchise Tax Board* for viewing the "federal issue" as if it formed part of the plaintiff's cause of action, rather than as a defense.

In fact, *Franchise Tax Board* is a far stronger case than this one for viewing the "federal defense" as if it formed part of a plaintiff's complaint. The federal claim here is weak on the merits. The courts have read the analogous "republican form of government" clause of the federal constitution as typically raising 'non-justiciable' issues suitable for resolution by the political branches of government, not the courts. *See, e.g., In re Duncan*, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219 (1891); *Lu-*

*ther v. Borden,* 7 How. (48 U.S.) 1, 12 L.Ed. 581 (1849). Moreover, unlike *Franchise Tax Board,* the complaint here fails to reveal the existence of this federal defense. Not even the Governor's lengthy response to the Senate (attached to the Senate's Commonwealth court complaint as an appendix) mentions the federal issue; it refers only to an 'executive privilege' defense based upon *Commonwealth* law; and, it mentions federal cases only by way of analogy. How can one claim that federal issues permeate a complaint—or occupy the field—when the issues are often held non-justiciable; when the complaint does not mention them; and when even the initial 'defense' statement rests upon Commonwealth, rather than federal, law?

Under these circumstances, to find the federal statutory issue inextricably part of plaintiff's 'cause of action' (rather than a defense) would work something of a jurisdictional revolution. After all, local land condemnation cases or zoning cases often involve a potential federal Compensation Clause defense; public nuisance abatement actions may encompass federal Due Process issues; local subpoena cases may involve a host of federal statutory or constitutional objections. Congress constitutionally might have allowed removal of these or many other local cases involving federal defenses, but it did not do so. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. at ——, 103 S.Ct. at 2847 n. 9. We must respect that congressional judgment. If respondents are arguing that there is something special about Puerto Rico that makes such local cases 'federal' in nature, the authoritative judicial response is that of Chief Judge Magruder to an analogous argument: "It simply can't be so." *Figueroa v. People of Puerto Rico,* 232 F.2d 615, 620 (1st Cir.1956) (the fact that Puerto Rico's Constitution's jury trial right was promulgated under, and subject to limitations of, federal Public Law 600, does not make the interpretation of that right a question of federal law).

Finally, the authority on which the district court relied for its conclusion is not on point. The court cited the following language from *Franchise Tax Board:*

Congress has given the lower federal courts jurisdiction to hear ... by removal ..., only those cases in which a well pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

463 U.S. at ——, 103 S.Ct. at 2856. Once one reads this language with due emphasis upon the words "well pleaded complaint," and in light of the court's prior statement in the opinion that federal *defenses* do not count, whatever appearance of support this language seems to give simply evaporates. The district court also relies upon *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). But in that case the thrust of plaintiff's claim (brought in federal court) was that defendants' proposed action was unlawful because an authorizing federal statute was unconstitutional; plaintiff's complaint revealed the federal basis for its claim on its face.

We conclude that the district court committed jurisdictional error in retaining this case. And, despite respondent's complex, and often heroic, arguments to the contrary, the error is a fairly obvious and serious one.

## II

We also conclude that this is an appropriate case for exercise of "the discretionary, and sparingly used, writ of mandamus." *In re La Providencia Development Corp.,* 406 F.2d 251, 253 (1st Cir.1969). We realize that the underlying investigation out of which this appellate proceeding arises is freighted with intense political and emotional overtones. We can make here no attempt to assess the propriety of the actions and procedures of either party. But of overarching importance, far outlasting the tempests of the present controversies, is the importance of both Commonwealth and federal courts adhering to their proper jurisdiction. Here we have found the district court to have been persuaded to misunderstand the clear meaning of the removal statute as expounded in a long line of Supreme Court (and circuit court) cases,

and to remove a case to federal court that did not fall within 28 U.S.C. § 1441. The analysis leading to this result, if allowed to stand, would apply equally to a host of other cases, thus needlessly interfering with Commonwealth legislative, executive, and court proceedings, and undermining basic principles of comity. Those principles suggest that such unauthorized intrusion should be speedily corrected. *Id.* Finally, the authority of the Senate to conduct the investigation at issue expires with the expiration of the session itself on December 31, 1984. Thus, even a short delay while the district court decides the merits threatens to deprive the Senate of whatever legal remedy the law may give it. This combination of jurisdictional error, upon an important matter of federal court/Commonwealth relations, with the possibility of harm through further delay, warrants issuance of the writ.

We have read *Ex parte Harding*, 219 U.S. 363, 31 S.Ct. 324, 55 L.Ed. 252 (1911), a case that the Governor cites for the proposition that the courts of appeals cannot issue mandamus to force remand of a case wrongly removed. But, *Harding* does not hold this. The *Harding* Court found that mandamus issues only in exceptional circumstances. And this case presents exceptional circumstances. Among the factors mentioned above, we stress the need here to exercise this circuit's supervisory powers in order to maintain sound and legally correct relations between the federal courts and the Commonwealth government. *See In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 25 (1st Cir. 1982); *cf. In re La Providencia Development Corp., supra.*

### III

We therefore conclude that the writ should issue vacating the orders entered by the district court in this case and remanding the matter forthwith to the Superior Court of Puerto Rico. While we do not believe that this order should be stayed, we withhold issuance of the writ for 48 hours after the issuance of this opinion to allow the respondent to seek a stay from the Supreme Court.

In deciding this case the way we have, we wish to make clear that we have made no judgment about the propriety of the procedures followed in issuing the subpoena in this case, nor do we express any view about the legal merits of the Senate's claim of right to a subpoena, or about the legal merits of a defense based on executive privilege. Our judgment here concerns only the technical legal question of the right to removal of this case to a federal court. No other matter is before us.

We note that we have issued this opinion *"per curiam."* While this form of opinion often is used to dispose of minor matters, it can also be used to reflect the fact that each judge of the panel believes the matter at issue is significant and agrees in detail with the opinion's reasoning and conclusions. We use the form here for the latter reason.

*A writ of mandamus shall be issued requiring the federal district court to vacate the orders in this case and to remand this case to the Superior Court of the Commonwealth of Puerto Rico.*

### (APPENDIX: THE "COMPLAINT")

### TRANSLATION

### APPENDIX # 2a

### SUPERIOR COURT OF PUERTO RICO

### SAN JUAN SECTION

MIGUEL HERNANDEZ AGOSTO, President of the Senate of Puerto Rico per se and representing the Senate of Puerto Rico and the Judiciary Commission, Plaintiff, vs. Carlos Romero Barcelo, Governor of the Commonwealth of Puerto Rico

### CIVIL NO. PE–84–1128

PETITION FOR INJUNCTION under Article 34A of Puerto Rico Political Code of 1902 Common Law 100 of June 23, 1955.

### PETITION

TO THE HONORABLE COURT:

Now comes the Honorable Miquel A. Hernandez Agosto, President of the Senate

of Puerto Rico and by virtue of authority conferred to him by Article 34A of the Political Code, Law No. 100 of June 23, 1955, 2 LPRA 154A, through his undersigned attorneys respectfully shows and prays:

1. That on February 23, 1982, the Senate of Puerto Rico as a body approved Senate resolution No. 91 ordering an investigation of what occurred on Cerro Maravilla on the 25th day of July 1978, it's antecedents and the acts later carried out by public and government officials, and on other matters. A certified copy of the said resolution is attached as Exhibit 1.

2. That resolution No. 91 in its Section 1–2 orders the Commission on the Judiciary to carry out a "broad and complete investigation on the following:

1. Everything that happened at Cerro Maravilla on July 25, 1978 related to the deaths of Carlos Soto Arrivi and Arnaldo Dario Rosado, including the actions of undercover agents, the actions of the Police at the site, as well as the participation of undercover agents, Police officers, and officers of other governmental agencies of the Government of Puerto Rico in general outside of Cerro Maravilla during that day and related to that operation.

2. All the facts leading to what occurred on Cerro Maravilla before July 25, 1978, including the activities of the two youth prior to that day, the activities of the Police and the undercover agents, and the activities of other officials of the Government of Puerto Rico that may be related to the planning, organizing, and direction of the operation of Cerro Maravilla on July 25, 1978.

3. All the activities of the Police officials and those of the other dependencies of the Executive Branch during the day of July 25, 1978, and after that day that may have any relation with the investigation of what occurred on Cerro Maravilla on the part of the Executive Branch and on any attempt of any public official to cover up what occurred on Cerro Maravilla and protect the participants against any action against them.

4. The investigation should include a study on the general procedures and practices used by the Police Department of Puerto Rico in the use of undercover agents, as well as the laws that cover these practices and procedures independently of what occurred on Cerro Maravilla on July 25, 1978."

3. In section 2–1, resolution No. 91 provides that once the ordered investigation is ended the Judiciary Commission must: "submit to the consideration of the Senate whatever legislation it recommends" from its determination of facts and the knowledge acquired during the investigation herein ordered and that has as its objective the avoidance of any future repetition of the wrongs discovered.

4. On May 28, 1982, the Senate Judiciary Commission approved a "Regulations for the conduct of the Senate Investigation on Cerro Maravilla". A certified copy of the regulation as amended is attached here as Exhibit 2.

5. In compliance with its charge and by virtue of the authority conferred by Law and the Regulations of the Investigation on April 27, 1984, the President of the Senate Judiciary Commission, Mr. Aponte Perez, issued a subpoena to the Honorable Governor Carlos Romero Barcelo in which it required that the Honorable Governor or his authorized representative deliver to the Commission on the 11th day of May, 1984, at 10 a.m. the information and documents therein specified. A certified copy of said subpoena duly served is attached hereto as Exhibit 3.

6. The Honorable Governor, Carlos Romero Barcelo, appeared through a repre-

sentative on May 11, 1984, and delivered a communication from his aid, Mr. Virgilio Ramos, in which he manifested his refusal to deliver to said Commission the information and documents that were required in Paragraphs 1, 1A, 2, 2A, 3, 3A, 4, 5, 5-1, 5-6, 6, 6A, 6B, 7, and 8. A copy of said communication from Mr. Virgilio Ramos is attached as Exhibit 4.

7. The Honorable Governor, Carlos Romero Barcelo has refused to deliver the information and documents that were required in Paragraphs 1, 1A, 2, 2-1, 3, 3A, 4, 5, 5A, 5B, 6, 6A, 6B, 7, and 8, alleging the lack of jurisdiction of the Judiciary Commission to entertain this matter and by virtue of an opinion of the Secretary of Justice dated May 9, 1984, which in synthesis declared that it would be unnecessary and improper to produce the information and the documents requested by the Commission.

8. On May 14, 1984, the Senate Judiciary Commission approved a resolution to "request that the Honorable President of the Senate of Puerto Rico representing the Commission and in the name of the Senate initiate the corresponding Judicial action in accordance with Section 154A of Chapter 9 Title 2 of the Laws of Puerto Rico Annotated to require the Honorable Governor of Puerto Rico, Carlos Romero Barcelo, to deliver all of those documents and information required in Paragraphs 1, 1A, 2, 2A, 3, 3A, 4, 5, 5A, 5B, 6, 6A, 6B, 7, and 8 of the summons that was issued so that he deliver them on May 11, 1984, and whose delivery the Honorable Carlos Romero Barcelo has refused to make." A certified copy of the May 14, 1984, resolution of the Judiciary Commission is attached as Exhibit 5.

9. In said resolution the Senate Judiciary Commission determined that:

"1. The delivery of said documents is fundamental to the carrying out of its legislative functions."

"2. The information and documentation requested from the Honorable Governor of Puerto Rico in Paragraphs 1, 1A, 2, 2A, 3, 3A, 4, 5, 5A, 5B, 6, 6A, 6B, 7, and 8 of the aforementioned summons is necessary so that the Commission may comply with the mandate of Section 1, Paragraphs 1, 2, 3, and 4 of the Senate resolution No. 91 for the investigation of the actions of Police and governmental officials related with the occurrences on Cerro Maravilla, its antecedents and acts carried out afterward and any attempt to cover up what occurred there."

"3. The information and documentation requested from the Honorable Governor of Puerto Rico in Paragraphs 1, 1A, 2, 2A, 3, 3A, 4, 5, 5A, 6, 6A, 6B, 7 and 8 of the aforementioned summons cannot be obtained by the Senate Judiciary Commission from any other source but the Honorable Governor of Puerto Rico since said documentation and information are in the possession and absolute control of the office of the Governor of Puerto Rico and the information contained in the required documents cannot be supplied to the Commission by any other proceeding or alternate source."

"4. The Senate Judiciary Commission considers that the refusal of the Honorable Governor of Puerto Rico to deliver the information and the documentation required in accordance with the summons herebeforementioned is arbitrary and without basis in law."

10. Attached to this petition and made a part hereof are certified copies of the following documents:

Exhibit 1 Senate Resolution No. 91

Exhibit 2 Regulations governing the Senate Investigation on Cerro Maravilla, as amended

Exhibit 3 Subpoena issued April 27 and duly served on the same day

Exhibit 4 Letter dated 11 may 1984, signed by Mr. Virgilio Ramos and addressed to the Honorable Francisco Aponte Perez, in which it is pointed out that the Governor of Puerto Rico would not deliver the required documents and information and the reasons for the refusal and a copy of the opinion of the interim Secretary of Justice, Nelson Martinez Acostia, with its appendixes.

Exhibit 5 Resolution approved by the Senate Judiciary Commission on May 14, 1984, requesting that the President of the Senate initiate the corresponding Judicial action and the specific reasons for requiring the documents requested from the Honorable Governor Carlos Romero Barcelo.

WHEREFORE it is respectfully requested that this Honorable Court in accordance with the provisions of Section 154A of Title 2 of the Laws of Puerto Rico, issue an order requiring and ordering the Honorable Governor Carlos Romero Barcelo to, under penalty of civil contempt, appear personally or through a authorized representative, and deliver to the Judiciary Commission the documents and information that were required through a subpoena duly issued and served.

Respectfully submitted,
In San Juan, Puerto Rico this ____ day of August, 1984.
RAMIREZ & RAMIREZ
129 Domenech Avenue
Hato Ray, PR 00918