CABLEVISION OF BOSTON LIMITED PARTNERSHIP, Cablevision Systems Boston Corporation and Charles F. Dolan, Plaintiffs,

v.

Raymond L. FLYNN, Mayor, Defendants.

CITY OF BOSTON and Raymond L. Flynn, Mayor, Plaintiffs,

v.

CABLEVISIONS SYSTEMS CORPORATION, Cablevision of Boston Limited Partnership, Cablevision Systems Boston Corporation and Charles F. Dolan, Defendants.

Civ. A. Nos. 88–0658–Y, 88–1526–Y.

United States District Court, D. Massachusetts.

March 30, 1989.

Bruce A. Singal, Ann Ryan–Small, Ferriter, Scobbo, Sikora, Caruso & Rodophele, P.C., Patrick Costello, Asst. Corp. Counsel, City of Boston, Boston, Mass., for City of Boston and Raymond Flynn.

Michael Collora, Dwyer & Collora, Boston, Mass., for Cablevision of Boston et al.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

On March 22, 1988, Cablevision of Boston Limited Partnership, together with Cablevision Systems Boston Corporation and Charles F. Dolan, its General Partners (together, "Cablevision"), plaintiffs, filed suit in the United States District Court for the District of Massachusetts seeking a declaration that the Cable Communications Policy Act of 1984 (the "Cable Act"), 47 U.S.C. sec. 521 *et seq.*, pre-empts the municipal regulation of cable television rates with the result that Cablevision did not violate the terms of its license agreement with the defendant Raymond L. Flynn, Mayor of Boston ("the Mayor"), by raising the rates for its basic service effective January 1, 1987.

On April 29, 1988, the Mayor moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction and the complaint fails to state a claim for which relief can be granted. In the alternative, the Mayor moved for summary judgment. On June 22, 1988, the Mayor and the City of Boston (together, "Boston") filed suit in the Superior Court for Suffolk County, Massachusetts, seeking injunctive and other relief from the cable television rate increase. All the named plaintiffs in the case pending before this Court were named as defendants in the state court action, as well as an additional defendant, Cablevision Systems Corporation. On June 29, 1988, counsel for Cablevision removed that state court action to the United States District Court, alleging jurisdiction under 28 U.S.C. sec. 1331 and the Cable Act.

Boston has moved for remand of that case to the Massachusetts Superior Court for Suffolk County. Cablevision argues that Boston's claims are pre-empted by the Cable Act and any claims it may have necessarily arise under the Cable Act, and give this Court subject matter jurisdiction. The position of Boston is that none of the state law claims are pre-empted, that any pre-emption argument functions only as an anticipatory defense to Boston's claims against Cablevision for breach of contract, and that this Court is therefore without jurisdiction to adjudicate either Cablevision's petition for declaratory judgment or Boston's suit filed in the Massachusetts Superior Court.

## I. JURISDICTIONAL CONSIDERATIONS

A complaint filed in federal court seeking declaratory judgment, as any complaint, must come within the purview of a district court's original subject matter jurisdiction. Similarly, under the removal statute, a defendant may remove a state court action only if the case falls within the original jurisdiction of the federal district court. 28 U.S.C. sec. 1441. Where, as here, there is

no diversity of citizenship between the parties, the subject matter jurisdiction of a district court—respecting either a complaint for declaratory judgment or a petition for the removal to federal court of pending state court proceedings—depends on whether the action "aris[es] under the Constitution, laws or treaties of the United States." 28 U.S.C. sec. 1331.

Although the concept of "federal question" jurisdiction under section 1331 is not susceptible of precise definition, it is settled that the question of whether a claim "arises under" federal law must be determined with reference to the "well-pleaded complaint." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). *See Gully v. First Nat'l Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (Cardozo, J.) (classic formulation of the well-pleaded complaint rule as requiring that the federal question "be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal").

The "well-pleaded complaint" rule, however, is no more susceptible of precise definition. Certainly the vast majority of cases that come within federal question jurisdiction come within Justice Holmes' definition that " '[a] suit arises under the law that creates the cause of action.' " *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8–9, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983) (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Cablevision, however, does not argue that Boston's claims, as stated in the state court complaint, are created by operation of federal law.[1]

■ The "well-pleaded complaint" rule teaches that where the federal question does not appear on the face of the complaint and is raised only by way of a federal defense, the jurisdictional statute does not authorize removal. *Hernandez–Agosto v. Romero–Barcelo*, 748 F.2d 1, 2 (1st Cir.1984).

To be sure, a plaintiff may not disguise an essentially federal claim by " 'artful pleading to close off [a] defendant's right to a federal forum....' " *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) (not questioning the district courts' factual finding that the plaintiff's state antitrust claims, though artfully pleaded, were essentially federal law claims) (quoting 14 C. Wright, A Miller & E. Cooper, Federal Practice and Procedure, sec. 3722, at 564–66 [1976] ). Similarly, one may not use the declaratory judgment procedure, 28 U.S.C. sec. 2201, merely as a device to expand federal jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673–74, 70 S.Ct. 876, 879–80, 94 L.Ed. 1194 (1950). That is, a litigant cannot simply go to federal court and there, by means of an action for declaratory relief, seek to have the validity of a federal law defense adjudicated in anticipation of a state law claim. *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). In this instance, the court looks behind the face of the complaint to determine the real nature of the claim, regardless of the plaintiff's characterization.

■ As the preceding suggests, federal courts have long been hesitant to assert jurisdiction merely because of the presence of a federal issue in a state-created cause of action, even where the federal issue is outcome determinative. *See, e.g., Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). A specific instance of this principle was presented in *Franchise Tax Board*, 463 U.S. 1, 103 S.Ct. 2841, where the Supreme Court ruled subject matter jurisdiction was lacking even though the central issue

---

1. It is aphoristic, although not especially helpful, that the plaintiff is generally considered the "master" of the complaint. *See, e.g., The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) (Holmes, J.) ("Of course, the party who brings a suit is master to decide what law he will rely upon"). A plaintiff, were this aphorism necessarily true, would be entitled to rely on state law causes of action and seek relief on those grounds in state court. There the case would have to stay, no matter what the actual subject matter of the dispute.

presented in the case turned on the meaning of a federal statute. To the same effect, in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 15, 95 L.Ed.2d 55 (1987), the Supreme Court suggested that it is rare that a federal statute has "that extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Nonetheless, a federal court should not hesitate to assert jurisdiction over a dispute "if a federal cause of action completely pre-empts [the] state cause of action" which is at the heart of the case.[2] *Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. at 2854 (citing *Avco*, 390 U.S. 557, 88 S.Ct. 1238).

This Court starts with the premise that nothing in the structure of our federal system prevents state courts from enforcing rights created by federal law. *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (holding that a state was required to enforce federal law). *Cf. Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 334–37, 4 L.Ed. 97 (1816) (Story, J.) (discussing the prophylaxis of the right of appeal to the Supreme Court). The supremacy clause of the Constitution, which authorizes pre-emption by Congress, is concerned with promoting the supremacy of federal law, not federal courts. *See Austin v. New England Tel. and Tel. Co.*, 644 F.Supp. 763, 769 (D.Mass.1986).

## II. PRE–EMPTION CONSIDERATIONS

The issue of Congressional intent—here whether Congress intended to supersede traditional common law remedies—is decisive to any pre-emption analysis. *See Louisiana Public Serv. Comm'n v. Federal Communications Comm'n*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Congress may pre-empt state law by including express language to that effect in a statute. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 203, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752 (1983); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Pre-emption may also be implied by courts where Congress has shown its intent to supersede state law altogether, as when it occupies a given field with a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Where Congress has not entirely superseded state regulation in a specific area, state law is still pre-empted "to the extent that it actually conflicts with federal law." *Pacific Gas & Electric*, 461 U.S. at 204, 103 S.Ct. at 1722; *see also Rath Packing*, 430 U.S. at 525–26, 97 S.Ct. at 1309–10. Moreover, pre-emption may be implied if, under the circumstances of the particular case, state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67–68, 61 S.Ct. 399, 404–05, 85 L.Ed. 581 (1941).[3]

The test for pre-emption jurisdiction, as opposed to pre-emption as a theoretical defense to a lawsuit, is whether a federal

---

**2.** This is the *Avco* exception to the well-pleaded complaint rule. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). *Avco* held that any complaint that comes within the federal cause of action supplied by Section 301 of the Labor Managment Relations Act, 29 U.S.C. sec. 185, necessarily arises under federal law. 390 U.S. at 559–60, 88 S.Ct. at 1236–37.

The only other Supreme Court case applying *Avco* to create preemption jurisdiction is *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), in which the Court held that an employee's common law contract and tort claims were preempted by The Employee Retirement Income Security Program

("ERISA"), 29 U.S.C. sec. 1001 *et seq.* The Court in *Metropolitan Life Ins.* ruled the claims came under a provision establishing an exclusive federal cause of action for resolution of such disputes and that Congress "clearly manifested an intent to make causes of action within the scope of ERISA's civil enforcement provisions ... removable to federal court." *Metropolitan Life Ins.*, 481 U.S. at 66, 107 S.Ct. at 1547.

**3.** When deciding if Congress intended a federal regulatory scheme to pre-empt state law, this Court is mindful also of the presumption that Congress generally does not intend to displace state law, *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981).

cause of action "completely preempts" a state cause of action. *Franchise Tax Board*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983). As the First Circuit has noted, the preemption exception to the customary strictures of federal jurisdiction has developed in response to "cases ... focused on such matters as state labor law claims—brought in an area that federal labor law *totally occupied.*" *Hernandez–Agosto*, 748 F.2d 1, 3 (1st Cir. 1984) (emphasis in original). Such an exception may be considered most justifiable where federal law not only "sets bounds for the operation of state law authority," *Franchise Tax Bd.*, 463 U.S. at 11, 103 S.Ct. at 2847, but also expressly provides for a uniform federal cause of action. *E.g. Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 558–59, 88 S.Ct. 1235, 1236–37, 20 L.Ed.2d 126 (1968) (section 301 of the Federal Labor Management Relations Act expressly supplies a federal cause of action to replace the preempted state contract claim); *cf. French v. Pan Am Express, Inc.*, 869 F.2d 1, 3 (1st Cir.1989) (Congress intended to occupy the field of pilot regulation in part because of a perceived Congressional goal to establish a simple uniform system of control over air safety).

## III. THE CABLE ACT

While this general statutory and decisional framework is largely beyond dispute, its application in light of the specific language of the Cable Act is less certain. Cablevision does not—and cannot—argue that the Cable Act explicitly has made the federal courts the exclusive arbiters of disputes involving cable television.[4] Rather, Cablevision argues that it was Congress' intent in passing the Cable Act to adopt a national policy and a uniform regulatory scheme for the regulation of cable television which would pre-empt and supersede all previous federal, state, and local regulation in that field. Cablevision argues that the pre-emptive force of the federal statute in this case is so powerful as to displace

any state cause of action for violation of contracts between a franchising authority and a cable television provider. Further, Cablevision argues that the Cable Act implicitly creates a federal right of action for franchising authorities to enforce franchise agreements with cable television providers. Cablevision submits, because Boston could and should have sued under the federal cause of action, that this Court has subject matter jurisdiction, the Cable Act having occupied the entire field of law governing this matter. This argument has merit only if Congress intended that the purported federal cause of action should pre-empt the traditional common law causes of action that Boston asserts.

Two judges of this court have explored this terrain, but each entered at a different procedural gate and thereafter trod a different path to a significantly different conclusion. In *Town of Norwood v. Adams–Russell Co.*, 627 F.Supp. 742 (D.Mass.1986) ("Norwood I"), Judge Garrity held that a cable franchisee could not remove to the federal court a state court breach of contract action initiated by a municipality, despite the alleged presence of a federal preemption defense. The *Norwood I* court grounded its conclusion upon its rulings that the well-pleaded breach of contract complaint raised no federal issue and, further, that the Cable Act created no cause of action by which the municipality could obtain a vindication of its contract rights. *Id.* at 744. In contrast, in *Nashoba Communications Limited Partnership No. 7 v. Town of Danvers*, 703 F.Supp. 161 (D.Mass.1988), a case where the cable franchisee struck first in federal court, seeking a declaration against a municipality that a certain rate freeze was invalid under the Cable Act, Judge Caffrey held that the district court had jurisdiction as the Cable Act had pre-empted the field of cable television regulation entirely and that the rate freeze was invalid.

The two instant cases before this Court present both procedural settings. In No.

---

**4.** In fact, state jurisdiction over certain aspects of cable television disputes is expressly preserved in the Cable Act. 47 U.S.C. sec. 556(b) (states may exercise jurisdiction with regard to cable services consistent with this subchapter).

88–0658–Y, the cable franchisee, Cablevision, brings a declaratory judgment in the federal court against the Mayor seeking a declaration that the Cable Act totally preempts municipal regulation of cable television rates (the procedural equivalent of *Nashoba Communications*). In No. 88–1526–Y, Cablevision seeks to remove a state court breach of contract action initiated by Boston (the procedural equivalent of *Norwood I*).

■ After a thorough review of the statutory language and the legislative history, this Court, respectfully disagreeing with Judge Caffrey on this point, concludes that in enacting the Cable Act, Congress did not intend to "totally occupy" the field of cable television services. *See Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d 1, 3 (1st Cir.1984). The Cable Act expressly preempts and supersedes state law and regulation only to the extent that it is "inconsistent" with that Act, 47 U.S.C. sec. 556(c), a statutory formulation which suggests that state law not inconsistent with the Cable Act is not pre-empted. Nor can 47 U.S.C. sec. 543(c), which outlines the limits on state or local authority to "regulate" cable rates, deprive state courts of their jurisdiction to consider such matters in view of the express preservation of state jurisdiction over cable television disputes. 47 U.S.C. sec. 556(b).[5] Thus, even should Judge Garrity have been in error in refusing to imply a cause of action under the Cable Act whereby Boston can obtain a vindication of its contract rights in federal courts,[6] any such implied right of action Boston may have against Cablevision under the Cable

Act does not, as matter of law, have the kind of "extraordinary pre-emptive power," *Metropolitan Life v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987), necessary to render impotent the traditional Massachusetts common law causes of action. *See French v. Pan Am Express,* 869 F.2d 1, 6 (1st Cir.1989).[7]

■ Because this Court concludes that any implied federal cause of action that may exist under the Cable Act does not so pre-empt common law theories as to convert them into essentially federal claims, Cablevision's pre-emption argument operates only as a possible defense in the courts of the Commonwealth to Boston's common law claims and cannot serve as a basis for subject matter jurisdiction upon which to ground its federal declaratory judgment action. *See Public Serv. Comm. of Utah v. Wycoff,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952).

Accordingly, Cablevisions' complaint seeking declaratory relief, No. 88–0658–Y, is DISMISSED pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and No. 88–1526–Y, having been improperly removed, is REMANDED to the Massachusetts Superior Court sitting in the County of Suffolk.

SO ORDERED.

---

**5.** It is clear to this Court that the Courts of Massachusetts are very cognizant of the pre-emption issues raised by the Cable Act. *See Town of Norwood v. Adams–Russell Co., Inc.,* 401 Mass. 677, 683–86, 519 N.E.2d 253 (1988) ("*Norwood II*"); *Town of Norwood v. Adams–Russell, Inc.,* No. 85–2407 (Massachusetts Superior Ct., Norfolk County, November 17, 1988) (Lynch, J.) (appeal pending).

**6.** This Court need not—and does not—express any opinion concerning whether such an implied right of action in fact exists. Likewise, it expresses no opinion on the merits of Cablevision's pre-emption defense, a matter which is left to the Massachusetts Superior Court.

**7.** Justice Brennan's concurring opinion in *Metropolitan* is instructive:

> I write separately only to note that today's holding is a narrow one.... The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court.*" [481 U.S. at 66, 107 S.Ct. at 1547] In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court.

481 U.S. at 67, 107 S.Ct. at 1548 (Brennan, J., concurring) (emphasis added by Brennan, J.).