Carlos M. HERNANDEZ–LOPEZ, et al., Plaintiffs,

v.

Commonwealth of PUERTO RICO, State Elections Commission, Defendants.

Civil No. 98–2157(SEC).

United States District Court, D. Puerto Rico.

Nov. 6, 1998.

Carlos M. Hernández–López; Hernández–Colón & Hernández–López; Mayaguez, PR, for Plaintiffs.

Ramón L. Walker–Merino; San Juan, PR, Pedro A. Delgado–Hernández; O'Neill & Borges; Hato Rey, PR, Gustavo A. Gelpí–Abarca; Department of Justice; Federal Litigation Division; San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is the Commonwealth of Puerto Rico and the State Elections Commission's ("defendants") Notice of Removal, filed October 16, 1998 (Docket # 1), seeking removal of the above-captioned action from the Superior Court of the Commonwealth of Puerto Rico, Mayaguez Part, to this Court. On that same date, defendants filed a motion seeking consolidation of this action with Civil Case No. 98–2031(CCC), which, according to defendants, involves similar questions of law and fact (Docket # 3). On October 19, 1998, plaintiffs, Carlos M. Hernández–López and the Frente Autonomista Mayaguezano, filed an opposition to defendants' request for removal and a request for urgent remand (Docket # 5).

For the reasons stated below in this Opinion and Order, defendants' notice of removal (Docket # 1) is **DENIED** and plaintiffs' request for urgent remand (Docket # 5) is **GRANTED.** The above-captioned action shall be **REMANDED** to the Superior Court of the Commonwealth of Puerto Rico, Mayaguez Part, for all further proceedings, pursuant to 28 U.S.C. § 1447(c).

### Procedural Background

Plaintiffs, Frente Autonomista Mayaguezano ("FAM") and its President, Carlos Hernández–López, originally filed this action before the Superior Court of the Commonwealth of Puerto Rico, seeking injunctive and declaratory relief against the implementation of Law No. 249, (hereinafter "the Act" or "Law No. 249"), which provides for the holding of a plebiscite on the political status of Puerto Rico on December 13, 1998.

Plaintiff Hernández–López is the President of FAM, which is "a non-incorporated association of citizens backing the development of the present political condition of Puerto Rico toward the establishment of a bilateral compact of Free Association with the United States." (Complaint, certified translation, para. 7). In their complaint, plaintiffs state that "plaintiff Hernández has defended the establishment of a relationship between the sovereign peoples of Puerto

Rico and the United States based on a bilateral compact of free association." They add that "Hernández has taken part in radio and television programs, including presentations before the Status Commission of the Popular Democratic Party. Likewise, he has defended his political beliefs before the Congress of the United States and the Legislature of Puerto Rico." (Complaint, certified translation, para. 6).

Plaintiffs claim that the Act is unconstitutional because it violates sections 1, 2, 4, 6, and 7 of the Bill of Rights of the Constitution of Puerto Rico (Const. of P.R., Art. II, Sections 1[1], 2[2], 4[3], 6[4], 7[5]).

Plaintiffs asserted the jurisdiction of the Superior Court of the Commonwealth of Puerto Rico based on the Constitution of the Commonwealth of Puerto Rico, the Puerto Rico Civil Rights Act, and the Electoral Law of Puerto Rico, 16 L.P.R.A. § 3016(a).[6]

Defendants are the Commonwealth of Puerto Rico, as the entity which adopted Law No. 249, and the State Elections Commission, the entity in charge of implementing said law.

**Factual Background—The Enactment and Implementation of Law No. 249**

On July 25, 1998 the Governor of Puerto Rico, Hon. Pedro Rosselló, announced that legislation would be submitted for the holding of a plebiscite on the political status of Puerto Rico. Subsequently, said legislation was submitted and approved by both branches of the Puerto Rico Legislature. On August 17, 1998 the Governor signed the aforementioned bill, converting it into Law No. 249.

Law No. 249 provides the people of Puerto Rico with four electoral options regarding the future political status of Puerto Rico. Among these options, the Legislature included an option known as "Free Association."[7]

---

**1.** Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality."

**2.** Article II, Section 2 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "The laws shall guarantee the expression of the will of the people by means of equal, direct, and secret universal suffrage and shall protect the citizen against any coercion in the exercise of the electoral franchise."

**3.** Article II, Section 4 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "No law shall be made abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances."

**4.** Article II, Section 6 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "Persons may join with each other and organize freely for any lawful purpose, except in military or quasi-military organizations."

**5.** Article II, Section 7 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "The right to life, liberty and the enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty or property without due process of law. No person in Puerto Rico shall be denied the equal protection

of the laws. No laws impairing the obligation of contracts shall be enacted. A minimum amount of property and possessions shall be exempt from attachment as provided by law."

**6.** 16 L.P.R.A. § 3016(a) provides as follows: "Any party affected by a resolution, ruling, or order of the State Elections Commission may, within the ten (10) days following the notice thereof, appeal to the Superior Court by submitting a writ for review. The petitioner shall be responsible for notifying the State Elections Commission and any affected party by means of a copy of the writ for review." It further provides: "The Superior Court shall hold a hearing on the merits, receive evidence, and make the corresponding determinations of fact and conclusions of law. The Court shall resolve and review within a term not to exceed twenty (20) days, counting from the date on which the petition was submitted."

**7.** The free association option on the plebiscite ballot will read as follows: "A Treaty which recognizes the full sovereignty of Puerto Rico to develop its relationship with the United States in a non-colonial, non-territorial association. The United States shall renounce all of its powers over Puerto Rico, and shall enter the Treaty in the same act. Puerto Rico shall retain all the powers which are not expressly delegated to the United States. Puerto Rico shall provide for Puerto Rican citizenship. The present citizens of the United States in Puerto Rico shall retain their American citizenship, if they so desire, and may transmit the same to their descendants, subject to the provisions of the laws of the United States,

According to the allegations contained in the complaint, prior to the enactment of Law No. 249, plaintiff Hernández, on behalf of FAM, appeared before the Government Commission of the House of Representatives to discuss the proposed plebiscite bill. Furthermore, FAM submitted a paper to the Government and Federal Affairs Commission of the Puerto Rico Senate.

Article 10 of the Plebiscite Act provides that "[a]ny group, organization or entity may request to certify to officially represent any option not represented by a political party." Pursuant to Article 10 of the Act, on September 2, 1998, plaintiff Hernández, on behalf of FAM, requested from the State Elections Commission (the "Commission") that it certify FAM as an entity entitled to represent the Free Association option. On that same date, the Secretary of the Commission denied FAM's application, informing FAM that the term provided by law to request observer status in the plebiscite process had already expired.

FAM sent a subsequent letter to the Commission, clarifying that FAM intended to participate in the plebiscite process not as an observer, but as representative of the Free Association option. On September 3, 1998 the Commission issued a final denial of FAM's application to represent the Free Association option, indicating to FAM that it did not comply with the requirements set forth in Article 10(1) of the Act.

Article 10(1) of the Act provides as follows:

> The State Elections Commission shall proceed to issue a certification crediting said petition, as long as the group, organization, or entity would comply with the following requirements:
>
> (1) If as of the date of its certification by the State Elections Commission, said group, organization, or entity had a juridical standing at the time this Act was enacted and had a public and acknowledged background of defending the option at bar.

Specifically, plaintiffs seek to declare Law No. 249 unconstitutional because: (a) "it excludes the participation in the electoral process of those organizations which are not incorporated and have no prior background in the defense of certain electoral alternative;" (b)"it excludes groups which are not political parties from participating in the Plebiscite if a political party later on decides to represent the same electoral option that the group;" and (c)"it discriminates on behalf of political parties in the distribution of electoral funds." (Complaint, certified translation, para. 2).

Defendants seek to remove the above-captioned action to this Court pursuant to the federal removal statute, 28 U.S.C. § 1441(b), claiming that plaintiffs' action is removable because the suit contains issues of federal law which are an essential element of plaintiffs' cause of action. In particular, defendants claim that plaintiffs' second cause of action, where they allege the unconstitutionality of the Act's requirement that a group, organization, or entity have a "public and acknowledged history of defending" the Free Association option, "necessarily entails a determination of whether free association has been recognized under United States and international law prior to Law No. 249 coming into effect." (Notice of Removal, Docket # 1, at 6). To that effect, defendants argue that "[t]he issue of whether the United States has recognized free association, and if so, whether this occurred prior to the enactment of Law No. 249, raises a fundamental, essential, and outcome-determinative issue of federal law, no matter whether plaintiffs characterize it as one of state law." *Id.*

Plaintiffs counter that the second cause of action contained in the complaint does not arise under federal law, because, contrary to defendants' assertions, "[n]owhere in their Complaint did plaintiffs question the existence, source or definition of Free Association as contained in the Plebiscite Law." (Plaintiffs' Request for Remand, Docket # 5,

---

or of the Treaty. It must be understood that, as of the effective date of the Treaty, the mere fact of being born in Puerto Rico shall not grant the right to be an American citizen. The Treaty to be negotiated shall provide for matters concerning

trade, defense, the use of the dollar, financial aid, and the protection of acquired personal rights. The Treaty shall also recognize the sovereign capacity of Puerto Rico to enter into covenants and other international treaties."

at 4). Plaintiffs argue that their claim of the constitutional infirmity of Article 10(1) has nothing to do with the way that the Free Association has been defined, or whether the existence of Free Association as an option had been previously recognized in either United States or international law. Instead, they argue that they are basing their claim solely on the fact that Free Association had never been previously offered to the Puerto Rican electorate as a status option in a plebiscite. Furthermore, plaintiffs claim that the "long and publicly recognized history of defending the alternative" requirement is in violation of the Constitution of the Commonwealth of Puerto Rico, not the laws or the Constitution of the United States. Thus, they argue that no possible basis for asserting federal jurisdiction exists in this instance.

**Applicable Law—Grounds for Removal**

The removal statute, 28 U.S.C. § 1441, provides in pertinent part that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). Under section 1441, "an action is removable to a federal court only if it might have been brought there originally." 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721, at 189 (1985), *quoted in Cervantez v. Bexar County Civil Service Commission*, 99 F.3d 730, 732–33 (5th Cir.1996). *See also Bally v. National Collegiate Athletic Association*, 707 F.Supp. 57, 58 (D.Mass.1988). Under 28 U.S.C. § 1447(c), a party opposing removal of the action may file a motion to remand, and a remand pursuant to section 1447(c) is "not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

■ A party seeking to remove a case has the burden of proving that federal jurisdiction exists. *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir.1997). *See also Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Transport Auditing, Inc. v. Sea–Land Service, Inc.* 897 F.Supp. 34, 35 (D.Puerto Rico,

1995). Furthermore, "the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action." *Varela–Fernandez v. Burgos*, 15 F.Supp.2d 183, 185 (D.Puerto Rico, 1998), *citing Shamrock Oil Gas & Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), *cited in University of Rhode Island v. A.W. Chesterton Company*, 2 F.3d 1200, 1202 (1st Cir. 1993).

The standard to determine whether removal is appropriate is well-established: "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Furthermore, it is also long-settled law that a plaintiff is the master of his own claim and can avoid removal of an action by solely relying on state law in the remedies sought. *Nashoba Communications Limited Partnership No. 7 v. Town of Danvers*, 893 F.2d 435, 437 (1st Cir.1990) *quoting Taylor v. Anderson*, 234 U.S. 74, 75, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) ("The presence of a federal question is determined 'from what necessarily appears in the plaintiff's statement of his own claim in the bill of declaration, unaided by anything alleged in anticipation of avoidance of defenses which is thought the defendant may interpose.'").

■ In a recent pronouncement on the removal issue, the First Circuit Court of Appeals stated that "the [well-pleaded complaint] rule stipulates that, with a few exceptions, ... a case arises under federal law only if a federally cognizable cause of action appears within the four corners of the complaint." *PCS 2000 LP v. Romulus Telecommunications, Inc.*, 148 F.3d 32, 34 (1st Cir. 1998). Precedent also clearly establishes that "[a] defense is not part of the plaintiff's properly pleaded statement of his or her claim." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, ——, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). Therefore, "a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."

*Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ There are two exceptions, however, to the well-pleaded complaint rule: the complete preemption doctrine and the "artful pleading" doctrine. The complete preemption doctrine establishes that although federal preemption is normally a defense that is insufficient to establish the presence of federal jurisdiction, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

■ Likewise, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. 2841. This corollary of the well-pleaded complaint rule, the "artful pleading doctrine", applies "when a plaintiff either 'characterize[s] his necessarily federal cause of action solely in state law terms' or 'fails to make specific reference . . . to a source of federal law that is clearly applicable.'" *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 209 n. 1 (1st Cir.1987), *quoting* 14A Wright, Miller & Cooper, *supra* § 3722, at 243, 276. "The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *BIW,* 132 F.3d at 831. "That said, however, the 'artful pleading' doctrine is a narrow exception to the well-pleaded complaint, and so must be used cautiously." *Varela–Fernandez,* 15 F.Supp.2d at 186. *See also In Re "Agent Orange" Litigation,* 996 F.2d 1425, 1430 (2d Cir.1993) ("[B]ecause we respect plaintiff's choice between state and federal forums, this exception to the well-pleaded complaint is necessarily a narrow one.")

**Analysis**

■ As stated above, defendants argue that removal is appropriate in this instance, at least as to plaintiffs' second cause of action, because resolution of plaintiffs' claim for relief depends directly on a substantial and important issue of federal law, namely, whether the Free Association option had been recognized by United States and international law prior to the enactment of Law No. 249. To justify their position, defendants cite the Supreme Court case of *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), which states that "where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction . . ." 255 U.S. at 199, 41 S.Ct. 243.

The Supreme Court's holding in *Smith,* however, has been significantly narrowed since its enunciation. In *Merrell Dow,* the Court stated that the holding in *Smith,* that federal jurisdiction is present where "the vindication of a right under state law necessarily turn[s] on some construction of federal law . . . must be read with caution." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808–09, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Furthermore, the First Circuit recently held that "[u]nless a federal statute bestows a private right of action, courts ought to presume that Congress did not intend the statute to confer federal jurisdiction." *PCS 2000 LP,* 148 F.3d at 35.

Plaintiffs counter that "[i]t is clear from the face of the complaint that plaintiffs' claim does not depend in the least on whether the United States has recognized Free Association as a valid status alternative." (Docket # 5, at 11). They further argue that because there is "no issue as to whether the United States has recognized Free Association as an alternative prior to the enactment of Law 249, there is absolutely no issue of federal law to be decided by Claim II of plaintiffs' complaint in the Puerto Rico action." *Id.* at 12.

Furthermore, plaintiffs correctly cite to the First Circuit's decision in *Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d 1 (1st Cir.1984), where the Court rejected defendant's argument that removal of an action directed at enforcing a subpoena issued to then-Governor Carlos Romero–Barceló to appear before the Puerto Rico Senate was proper. Defendant had argued that, in spite of the fact that the Senate had based its claim against him under Section 34–A of the Puerto Rico Political Code, removal was proper because the "Senate's court action involve[d] a federal issue, namely, whether enforcement of the subpoena would violate a federal requirement that Puerto Rico's Constitution provide a 'republican form of government.'" *Id.* at 2. Just as defendants argue in the instant case, defendant Romero–Barceló asserted "that the federal argument [was] so important that it (or its denial) [was] an inextricable part of the plaintiff's affirmative case." *Id.* at 3.

Said argument was soundly rejected by the First Circuit, which held that any federal issues that may have to be resolved to determine the merits of plaintiff's claims would only come by way of defense and thus did not form part of plaintiff's affirmative case. The Court declined to apply the narrow "artful pleading" exception, stating that "the simple fact is that the federal issue would not appear in the case unless the defendant chose to assert it." *Id.* It likened what defendant sought to do, "to find the federal statutory issue inextricably part of plaintiff's cause of action (rather than a defense)", to "something of a jurisdictional revolution." *Id.* at 4. The Court went on to add that "[i]f respondents are arguing that there is something special about Puerto Rico that makes such local cases 'federal' in nature, the authoritative response is that of Chief Judge Magruder to an analogous argument 'It simply can't be so.'" *Id., quoting Figueroa v. People of Puerto Rico,* 232 F.2d 615, 620 (1st Cir.1956).

As we did in our recent holding in *Varela–Fernandez, supra,* we reiterate the First Circuit's pronouncement in *Hernandez–Agosto* regarding the proper relationship between the federal courts and the courts of the Commonwealth of Puerto Rico, as well as the role of the federal courts as courts of limited jurisdiction: "[O]f overarching importance, far outlasting the tempests of the present controversies, is the importance of both Commonwealth and federal courts adhering to their proper jurisdiction." *Id.* at 4. We also reiterate our previous statement that "[w]e believe that the Courts of the Commonwealth are fully capable of resolving any issues of federal law that may be raised by [defendant] in the resolution of this case, and over which they have concurrent jurisdiction with federal courts." *Varela–Fernandez,* 15 F.Supp.2d at 187.

We find that plaintiffs' claims are clearly local in nature. Plaintiffs' lawsuit stems from an adverse decision of the Puerto Rico State Elections Commission, and pursuant to that they filed a writ of revision in the forum that is prescribed by the Puerto Rico Electoral Law, the Superior Court of the Commonwealth of Puerto Rico.

Furthermore, the relief they seek is based solely on protections claimed pursuant to the Bill of Rights of the Commonwealth of Puerto Rico, not on the Constitution or the laws of the United States. It is after all firmly established that Puerto Rico is, "like a state, ... an autonomous political entity, 'sovereign over matters not ruled by the Constitution.'" *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 7, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982), *quoting Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 673, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Furthermore, the First Circuit has held that "the creation of the Commonwealth granted Puerto Rico authority over its own local affairs" and that the "Constitution of the Commonwealth is not another Organic Act of Congress." *United States v. Quinones,* 758 F.2d 40, 42–43 (1st Cir.1985), *quoting Figueroa v. People of Puerto Rico,* 232 F.2d 615, 620 (1st Cir.1956). The courts of the Commonwealth of Puerto Rico are the proper forum to determine the scope of the protections contained in its own Constitution.

Finally, we find that there is absolutely no issue of federal law in this case that would warrant the exercise of federal jurisdiction, even if we were to unbearably stretch the scope of the "artful pleading" doctrine be-

yond any applicable precedent. We wholeheartedly agree with plaintiffs that there is no federal issue in this case because plaintiffs have not called into question the existence or the validity of the Free Association status option, and that as such, a determination of its existence under United States or international law is not warranted. At most, even if a determination of this allegedly federal issue were necessary for the resolution of plaintiffs' second claim, it would only arise by way of a defense, something which has been clearly established is insufficient to confer removal jurisdiction upon this Court. Thus, under no reading of plaintiffs' complaint, even in the one most favorable to defendants' position regarding the existence of a federal issue, may this Court exercise jurisdiction over the instant case.[8] The proper forum for the determination of plaintiffs' claims is the Superior Court of the Commonwealth of Puerto Rico, where this case was originally filed, and from where it was improvidently removed by defendants.

## Conclusion

We find that plaintiffs' claims are clearly purely local in nature and that they should be adjudicated by the courts of the Commonwealth of Puerto Rico. In light of the above discussion, and pursuant to 28 U.S.C. § 1447(c), we find that the above-captioned action was improvidently removed from the Superior Court of the Commonwealth of Puerto Rico. We further find that we are without jurisdiction to entertain this action because plaintiffs' suit does not "arise under" federal law and is therefore not removable under 28 U.S.C. § 1441. The above-captioned action is thus hereby **REMANDED** to the Superior Court of the Commonwealth of

Puerto Rico, Mayaguez part, for all further proceedings. Judgment shall be entered accordingly.

**SO ORDERED.**

---

8. In addition to seeking removal of the above-captioned case, defendants have also requested that this Court consolidate this action with a parallel federal action currently pending in this district, Civil Case No. 98–2031(CCC), which they allege has similar questions of law and fact as the instant case. However, the Court need not address the issue of the propriety of consolidation because it is well-settled that an action which is improvidently removed may not be consolidated with another over which the Court does have jurisdiction. *See, e.g., United States v. Brandt Construction Co.,* 826 F.2d 643, 647 (holding that a district court does not acquire jurisdiction over an improvidently removed case by consolidating it with one properly before it); *McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982) (same). *See also Brooks v. Rosiere,* 585 F.Supp. 351, 354 (E.D.La.1984) ("[I]f removal is found to have been improvidently granted, remand is mandatory and the court lacks jurisdiction to transfer the case to another federal court."); *Appalachian Power Company v. Old Heritage Corp.,* 364 F.Supp. 1273, 1277 (W.D.Va. 1973) ("[I]f plaintiff's action ... is not proper for removal it is not 'pending before the Court', and this court has no authority to consolidate an action of which it has jurisdiction with one which it does not.")