Idania M. Servia MENDOZA, Plaintiff,

v.

Norma BURGOS, Secretary of State of the Commonwealth of Puerto Rico, et al., Defendants.

Civil No. 98–236–(SEC).

United States District Court, D. Puerto Rico.

Dec. 11, 1998.

Idania Servia–Mendoza, Bayamón, PR, pro se.

Gustavo A. Gelpí–Abarca, Dept. of Justice, Federal Litigation Division, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendants' notice of removal, filed December 8, 1998 (**Docket # 1**), seeking removal of the above-captioned action from the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, to this Court. On December 10, 1998 plaintiff Idania M. Servia Mendoza filed a Motion to Oppose Removal (**Docket # 3**), seeking an immediate remand and requesting sanctions. For the reasons stated below in this Opinion and Order, defendants' notice of removal (**Docket # 1**) is **DENIED** and plaintiff's request for remand (**Docket # 3**) is **GRANTED**. The above-captioned action shall be **REMANDED** to the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, for all further proceedings, pursuant to 28 U.S.C. § 1447(c).

### Factual Background

On December 7, 1998 plaintiff, Idania Servia Mendoza, filed this action before the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, seeking declaratory and injunctive relief. She claims that the State Elections Commission's Permanent Inscription Board's refusal to register her as a voter in Puerto Rico violates Art. II, Sections 1 and 2 of the Constitution of the Commonwealth of Puerto Rico. We take the relevant facts as averred in plaintiff's complaint, filed before the Superior Court of the Commonwealth of Puerto Rico, San Juan Part.

Plaintiff was born on September 18, 1963 in Panama. Her father, Cristobal Servia Rivera, was born in Guayama, Puerto Rico; her mother, Librada Mendoza Rodriguez, was born in Panama. At the time of plaintiff's birth, her father was a member of the United States Military, and serving in Panama. When plaintiff was four years old, her parents moved to Puerto Rico, bringing plaintiff with them. Plaintiff has resided in Puerto Rico since that time, in an uninterrupted fashion and completed all of her studies in Puerto Rico. She has never applied to be a citizen of the United States, and thus remains a legal resident alien.

Plaintiff states that "through education and social, family, and religious experience, she acquired the Puerto Rican culture and idiosyncracy." She further states that she "is interested in actively participating in the political community of the country of which she is and feels part of, through the exercise of the electoral vote in the upcoming December 13, 1998 plebiscite and any other electoral event, successively."

When she went to register to vote, she was not allowed to do so because she could not furnish either a birth certificate issued by the Commonwealth of Puerto Rico or a certificate of naturalization as a citizen of the United States. She claims that said denial violates sections 1 and 2 of the Bills of Rights of the Constitution of the Commonwealth of Puerto Rico (Const. of P.R., Art. II, Sections 1 [1], 2 [2]).

Plaintiff also bases her right to become a registered voter in Puerto Rico on the Puerto Rico Supreme Court's decision in the case of *Ramirez de Ferrer v. Mari Bras,* CT–96–14, 1997 WL 870836, dated November 18, 1997, which recognized the existence of Puerto Rican citizenship under the Constitution of the Commonwealth of Puerto Rico. She claims that pursuant to the principle of *jus sanguinis,* she is entitled to be considered a Puerto Rican citizen and thus be eligible to vote in Puerto Rico. The *Ramirez* decision recognized the right of respondent, Juan Mari Bras, who was born in Puerto Rico and had renounced his United States citizenship, to remain a registered voter in the Common-

---

**1.** Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on the account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality."

**2.** Article II, Section 2 of the Constitution of the Commonwealth of Puerto Rico reads as follows: "The laws shall guarantee the expression of the will of the people by means of equal, direct, and secret universal suffrage and shall protect the citizen against any coercion in the exercise of the electoral franchise."

wealth of Puerto Rico.[3] In that opinion, the Puerto Rico Supreme Court also clearly established the Commonwealth's faculty to regulate all facets of the electoral process in Puerto Rico, including determining who is qualified to vote in local elections. To that effect, the Court stated: "[T]he power to determine the requirements for exercising the right to vote in our jurisdiction belongs essentially to the Commonwealth of Puerto Rico. The Commonwealth has broad powers to determine and regulate everything concerning the electoral process, including the power to identify qualified voters." *Ramirez, supra,* 1997 WL 870836, at 15.

### Applicable Law—Grounds for Removal

The removal statute, 28 U.S.C. § 1441, provides in pertinent part that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties." · 28 U.S.C. § 1441(b). Under section 1441, "an action is removable to a federal court only if it might have been brought there originally." 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721, at 189 (1985), *quoted in Cervantez v. Bexar County Civil Service Commission,* 99 F.3d 730, 732–33 (5th Cir.1996). *See also Bally v. National Collegiate Athletic Association,* 707 F.Supp. 57, 58 (D.Mass.1988). Under 28 U.S.C. § 1447(c), a party opposing removal of the action may file a motion to remand, and a remand pursuant to section 1447(c) is "not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

█ A party seeking to remove a case has the burden of proving that federal jurisdiction exists. *BIW Deceived v. Local S6,* 132 F.3d 824, 831 (1st Cir.1997). *See also Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Trans-*

*port Auditing, Inc. v. Sea–Land Service, Inc.* 897 F.Supp. 34, 35 (D.Puerto Rico, 1995). Furthermore, "the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action." *Varela–Fernandez v. Burgos,* 15 F.Supp.2d 183, 185 (D.Puerto Rico, 1998), *citing Shamrock Oil Gas & Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), *cited in University of Rhode Island v. A.W. Chesterton Company,* 2 F.3d 1200, 1202 (1st Cir. 1993).

The standard to determine whether removal is appropriate is well-established: "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Furthermore, it is also long-settled law that a plaintiff is the master of his own claim and can avoid removal of an action by solely relying on state law in the remedies sought. *Nashoba Communications Limited Partnership No. 7 v. Town of Danvers,* 893 F.2d 435, 437 (1st Cir.1990) *quoting Taylor v. Anderson,* 234 U.S. 74, 75, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) ("The presence of a federal question is determined 'from what necessarily appears in the plaintiff's statement of his own claim in the bill of declaration, unaided by anything alleged in anticipation of avoidance of defenses which is thought the defendant may interpose.' ").

█ In a recent pronouncement on the removal issue, the First Circuit Court of Appeals stated that "the [well-pleaded complaint] rule stipulates that, with a few exceptions, ... a case arises under federal law only if a federally cognizable cause of action appears within the four corners of the complaint." *PCS 2000 LP v. Romulus Telecommunications, Inc.,* 148 F.3d 32, 34 (1st Cir. 1998). Precedent also clearly establishes that "[a] defense is not part of the plaintiff's

---

3. In said opinion, the Puerto Rico Supreme Court held that "since the faculty to pass judgment on any kind of substantial modification to the political status of Puerto Rico solely belongs to the people of Puerto Rico ... excluding the members of the Puerto Rican community—as are the citizens of Puerto Rico like Mari Bras—from

such processes would raise, again, to say the least, serious constitutional questions. This is so because any *bona fide* Puerto Rican has an unquestionable right to participate in the electoral processes that affect the final destiny of our country." *Ramirez,* CT–96–14, official translation, at 35.

properly pleaded statement of his or her claim." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). Therefore, "a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ There are two exceptions, however, to the well-pleaded complaint rule the complete preemption doctrine and the "artful pleading" doctrine. The complete preemption doctrine establishes that although federal preemption is normally a defense that is insufficient to establish the presence of federal jurisdiction, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

■ Likewise, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. 2841. This corollary of the well-pleaded complaint rule, the "artful pleading doctrine", applies "when a plaintiff either 'characterize[s] his necessarily federal cause of action solely in state law terms' or 'fails to make specific reference ... to a source of federal law that is clearly applicable.'" *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 209 n. 1 (1st Cir.1987), *quoting* 14A Wright, Miller & Cooper, *supra* § 3722, at 243, 276. "The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *BIW,* 132 F.3d at 831. "That said, however, the 'artful pleading' doctrine is a narrow exception to the well-pleaded complaint, and so must be used cautiously." *Varela–Fer-*

*nandez,* 15 F.Supp.2d at 186. *See also In Re "Agent Orange" Litigation,* 996 F.2d 1425, 1430 (2d Cir.1993) ("[B]ecause we respect plaintiff's choice between state and federal forums, this exception to the well-pleaded complaint is necessarily a narrow one.")

## The parties' arguments regarding the propriety of removal

Defendants filed a notice of removal in this case, alleging that federal jurisdiction is present because "plaintiff's complaint, viewed in the context that the upcoming plebiscite is a petition to Congress for redress of grievances under the First Amendment to the Constitution, and that the results thereof shall be transmitted both to the President and Congress of the United States, raise important federal implications regarding the future relationship between the United States and Puerto Rico... Should individuals such as plaintiff, who are not United States citizens, be legally entitled to affect the political status of a United States territory via their vote is an important federal issue." **(Docket # 1, Notice of Removal, page 5).** As they have done in the recent past with all of the suits filed related to the upcoming December 13, 1998 status plebiscite, defendants have argued that removal is proper because "[a]ny challenge to a law sponsoring a Puerto Rico status plebiscite (whose purpose is to send a message to Congress) will undeniably have some bearing on a federal issue of the utmost importance the relationship between Puerto Rico and the federal government... Any decision that a court makes regarding a status plebiscite could well affect the results of the elections, and thus the relationship between Puerto Rico and the federal government, a purely federal issue." **(Docket # 1, Notice of Removal, page 4).**

Defendants also aver that because plaintiff's claim that she has been precluded from voting violates her right to equal protection would be actionable under 42 U.S.C. § 1983, her state claim should be recharacterized by this Court as a federal claim.

In her request for remand, plaintiff first counters that she is not challenging the validity of Law No. 249, which sponsors the up-

coming plebiscite; rather, she seeks inclusion in the registry of eligible voters to be able to participate in the process. (**See Docket # 3**) Furthermore, she argues that a prospective voter's qualifications to vote in a locally-implemented plebiscite is not a matter of federal jurisdiction; rather, it is an issue to be decided by the local courts pursuant to the Constitution and laws of the Commonwealth of Puerto Rico. More specifically, plaintiff argues that Article II, Section 2 of the Constitution of the Commonwealth of Puerto Rico provides the rule of law to be interpreted in the resolution of her claim and that it is up to the Puerto Rico courts to so resolve.

**Analysis**

 We find that there is no federal issue presented within the four corners of plaintiff's complaint that would allow this Court to exercise removal jurisdiction under 28 U.S.C. § 1441. The remedy sought by plaintiff is purely local in nature. The Supreme Court of the United States has clearly established that states have the power to regulate the qualifications of their voters: "States can within limits specify the qualifications of voters in both state and federal elections; the Constitution indeed makes voters' qualifications rest on state law even in federal elections." *Gray v. Sanders,* 372 U.S. 368, 379, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). The U.S. Supreme Court has also clearly established that Puerto Rico is, "like a state, . . . an autonomous political entity, 'sovereign over matters not ruled by the Constitution.'" *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 7, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982), *quoting Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 673, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Furthermore, the First Circuit has held that "the creation of the Commonwealth granted Puerto Rico authority over its own local affairs" and that the "Constitution of the Commonwealth is not another Organic Act of Congress." *United States v. Quinones,* 758 F.2d

40, 42–43 (1st Cir.1985), *quoting Figueroa v. People of Puerto Rico,* 232 F.2d 615, 620 (1st Cir.1956). As we stated in our recent opinion in *Hernandez–Lopez v. Commonwealth of Puerto Rico,* 27 F.Supp.2d 302 (D.P.R.1998), at 7, "The Courts of the Commonwealth of Puerto Rico are the proper forum to determine the scope of the protections contained in its own Constitution."

 Applicable precedent clearly dictates that this case should be remanded to the Superior Court of the Commonwealth of Puerto Rico. We must heed the First Circuit's admonition in *Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d 1, 4 (1st Cir.1984): "[O]f overarching importance, far outlasting the tempests of the present controversies, is the importance of both Commonwealth and federal courts adhering to their proper jurisdiction." To that end, we must also heed First Circuit Judge Frank M. Coffin's call to "get back to Hamilton's concept of 'ONE WHOLE'", whereby "[t]he concept that we have a two-tier court system consisting of a first and second class must be eradicated." Frank M. Coffin, *On Appeal: Courts, Lawyering, and Judging* 319 (1994). As we stated in our recent opinion in *Ramos–Hernandez v. State Elections Commission,* 30 F.Supp.2d 178, 182, "[w]e must respect the jurisdictional bounds of each court system, and recognize their equal standing as equal arbiters of the law. It is thus both surprising and troubling that the Commonwealth of Puerto Rico has opted for a policy of removal of cases that are clearly within the jurisdiction of its local court system, and not the federal courts." [4]

Of even more concern, however, is the apparent recent trend demonstrated by the Government of removing for a second time cases that have been remanded by the undersigned upon a finding of lack of federal removal jurisdiction.[5]

A second removal after a district judge has remanded a case pursuant to 28 U.S.C.

---

4. The right of removal to federal courts was originally designed to protect nonresidents from the local prejudices of state courts. *See* 14A Wright, Miller & Cooper, *supra* § 3721. On the other hand, the Eleventh Amendment of the U.S. Constitution, U.S. CONST. amend. XI, prohibits suits in federal courts against state governments.

It is therefore unusual for a state to waive its sovereign immunity from suit and request removal to the federal court.

5. This has occurred in all three cases that have been recently been remanded by the undersigned: *Varela–Fernandez v. Burgos,* 15

§ 1447(c) is only allowed under very limited circumstances pursuant to 28 U.S.C. § 1446(b), as § 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise..." The First Circuit has established a black letter rule that once a case is remanded by the district court it loses jurisdiction to reconsider its earlier remand order, even if it was clearly erroneous. To that end, it has stated: "Removal ... to the prejudice of state court jurisdiction, is a privilege to be strictly construed ... and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity. *The action must not ricochet back and forth depending upon the most recent determination of a federal court...* The district court has one shot, right or wrong." *In re La Providencia Development Corporation,* 406 F.2d 251, 252 (1st Cir.1969), *emphasis added.* The First Circuit has interpreted the subsequent removal provision of § 1446(b) quite narrowly, and has justified its narrow reading by stating that "[t]he 'one shot' rule rests on a strong Congressional policy that non-removable suits should not be tied in lengthy appeals and motions for reconsideration in the federal courts." *Federal Deposit Insurance Corp. v. Santiago Plaza,* 598 F.2d 634, 637 (1st Cir.1979). Unfortunately, this policy of subsequent or re-removal shortly after a case has been remanded by the undersigned may give the impression of forum or judge-shopping which in turn may affect the public's confidence in the impartiality of this court.

We find that there is no issue of federal law that would permit the exercise of federal jurisdiction, even if we were to unbearably stretch the scope of the "artful pleading" doctrine beyond any applicable precedent. The determination of a voter's qualifications is solely a issue to be determined by the individual states; it is thus up to the courts of the Commonwealth of Puerto Rico to decide whether its own Constitution mandates that plaintiff be allowed to register to vote in Puerto Rico. Under no reading of plaintiff's complaint may this Court exercise jurisdiction over the instant case. The proper forum for the determination of plaintiff's claims is the Superior Court of the Commonwealth of Puerto Rico, where this case was originally filed, and from where it was improvidently removed by defendants.

**Conclusion**

We find that plaintiff's claims are clearly purely local in nature and that they should be adjudicated by the courts of the Commonwealth of Puerto Rico. In light of the above discussion, and pursuant to 28 U.S.C. § 1447(c), we find that the above-captioned action was improvidently removed from the Superior Court of the Commonwealth of Puerto Rico, San Juan Part. We further find that we are without jurisdiction to entertain this action because plaintiffs' suit does not "arise under" federal law and is therefore not removable under 28 U.S.C. § 1441. The above-captioned action is thus hereby **RE-MANDED** to the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, for all further proceedings. Judgment shall be entered accordingly.

**SO ORDERED.**

F.Supp.2d 183 (D.P.R. 1998); *Hernandez–Lopez v. Commonwealth of Puerto Rico,* 27 F.Supp.2d 302 (D.P.R.1998)(SEC); and *Ramos–Hernandez v. State Elections Commission,* 30 F.Supp.2d 178 (D.P.R.1998).